No. 85-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

KEVIN JOSEPH SWANSON,

Defendant and Appellant,

---

APPEAL FROM: District Court of the Tenth Judicial District, In and for the County of Fergus, The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Torger S. Oaas, Lewistown, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Barbara Claassen, Asst. Atty. General, Helena
Craig R. Buehler, County Attorney, Lewistown, Montana
James Stogsdill, Deputy County Attorney, Lewistown

---

Submitted on Briefs: April 4, 1986

Decided: July 25, 1986

Filed: JUL 25 1986

Ethel M. Harrison
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Swanson appeals from an order of the Fergus County District Court denying his motion to dismiss and finding him guilty of driving under the influence of alcohol.

We reverse and remand.

Swanson raises the following issues on appeal:

1. Whether he was denied due process by being deprived of a reasonable opportunity to gather exculpatory evidence, and;

2. Whether the District Court erred in denying his motion to dismiss and granting the State's motion to strike Swanson's motion?

On January 9, 1985, at 1:30 a.m., Swanson was stopped by Officer McCoy of the Lewistown Police Department. Swanson was taken to the police station where his actions were video taped. He performed three field sobriety tests. After performing the tests, the officer placed him under arrest for driving under the influence of alcohol. The officer then read Swanson his Miranda rights and the implied consent law. The officer requested Swanson to submit to a breath test. Swanson refused to submit to the breath test, but said he would submit to a blood test. The officer informed Swanson that a blood test would be done at Swanson's expense.

After talking to his parents by telephone, Swanson was taken to the hospital where a blood sample was drawn. The sample was placed in a glass vial with an address where it was to be sent for analysis, and with a label saying "Keep Refrigerated." The sample was given to the officer who gave it to Swanson telling him it was Swanson's sample, that he

was responsible for paying for it, and that he should send it in as soon as possible.

From the hospital, Swanson was transferred to the Sheriff's office. At the Sheriff's office, the officer again told Swanson that he should send the sample to the address on the container. During the booking process the sample was taken from Swanson and placed on the counter in the booking room. Swanson was placed in the Fergus County Jail. When the officer left the Sheriff's office, he saw the sample on the counter in the dispatch room. The officer next saw the sample one or two days later at the police station. He placed the sample in the refrigerator, then called Swanson's father and told him that someone needed to get the sample and send it in for analysis. Swanson's father picked up the sample on January 13, 1985. Swanson was released on his own recognizance on January 11, 1985.

The sample was never analyzed. The parties entered into a stipulation regarding the decreased validity of the sample due to its not being refrigerated. The stipulation stated:

> In lieu of submitted formal proof in the form of testimony (sic) and exhibits, it is hereby stipulated as follows:
>
> 1. That on January 9, 1985, in reference to the above entitled case a blood sample was taken from Kevin Swanson at the Central Montana Hospital.
>
> 2. The blood sample was improperly preserved in that it was not refrigerated. Due to the length of time which elapsed between the drawing of said sample and the laboratory analysis thereof a valid determination of its blood alcohol content could not be made.
>
> 3. Had this blood sample been properly preserved and timely sent to a laboratory for analysis it would have indicated Kevin Swanson's actual blood alcohol content at the time said sample was drawn.
>
> DATED this 5th day of June, 1985.

Swanson filed a motion to dismiss on June 7, 1985. On June 14, 1985, the State filed a motion to strike Swanson's motion. Following a June 19, 1985 hearing, the court took the motions under advisement and decided to consider them at the time of trial.

Following a nonjury trial held July 1, 1985, the District Court filed an order denying Swanson's motion, granting the State's motion, and finding Swanson guilty. Swanson appeals from this order.

The first issue is whether Swanson was denied due process by being deprived of a reasonable opportunity to gather exculpatory evidence? Swanson argues that his inability to have his blood sample analyzed was the fault of the State. The State counters that Swanson had no right to an independent test, that the arresting officer facilitated Swanson's having a blood sample drawn by taking him to the hospital, and that no further action was required.

Section 61-8-402(3), MCA, states that if a driver refuses to submit to an alcohol test designated by the arresting officer, then none shall be given by that officer. The statute concerning additional tests is § 61-8-405(2), MCA, which states:

> The person tested may, at his own expense, have a physician or registered nurse of his own choosing administer a test, in addition to any administered at the direction of a peace officer, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath, or urine.

A criminal accused has a constitutional right to attempt to obtain exculpatory evidence. When the crime involves intoxication, the accused has a right to obtain a sobriety test independent of that offered by the arresting officer. The language of § 61-8-405(2), MCA, does not support the

State's interpretation that the right to an independent test arises only after the accused takes a test designated by the arresting officer. The Arizona Appellate Court interpreted a statute identical to § 61-8-405(2), MCA, and held that the State's interpretation "would result in an unconstitutional restraint on the right of a criminal accused to attempt to obtain independent evidence of his innocence and operate to deprive the accused of due process of law." Smith v. Cada (Az. App. 1977), 562 P.2d 390, 393. Other cases also hold that denying one charged with an offense involving intoxication the right to attempt to obtain at his own expense a blood or other test to establish sobriety amounts to a denial of due process. State v. Choate (Tenn. 1983), 667 S.W.2d 111; McNutt v. Arizona (Ariz. 1982), 648 P.2d 122; State v. Snipes (Mo. 1972), 478 S.W.2d 299; Kesler v. Department of Motor Vehicles (Cal. 1969), 459 P.2d 900; In re Martin (Cal. 1962), 374 P.2d 801.

We agree with these cases and hold that one accused of a crime involving intoxication has a right to obtain an independent blood test to establish his sobriety regardless of whether he submits to a police designated test. The question becomes whether the State interfered with Swanson's attempt to obtain this independent test. As the California Supreme Court stated:

> [P]olice officers are not required to take the initiative or even to assist in procuring any evidence on behalf of a defendant which is deemed necessary to his defense (citations omitted). But in no event can duly constituted authority hamper or interfere with efforts on the part of an accused to obtain a sampling of his blood, without denying to him due process of law. We are persuaded to such conclusion in any instance where the conduct of the authorities, whether through affirmative action or by the imposition of their rules and regulations, imposes any material obstacle in the path of the accused. Nor are we impressed that an

> accused, as perhaps in the instant case, might have reached his goal by pursuing a different course. It is sufficient if, in seeking to establish the fact of the alcoholic content of his blood, the authorities, by their actions or regulations, frustrate his reasonable efforts designed to produced probative evidence.

In re Martin (Cal. 1962), 374 P.2d 801, 803.

In this case, the arresting officer transported Swanson to a hospital to enable him to have a blood sample drawn, and transported him back to the Sheriff's office. Swanson was then booked into the Fergus County Complex. His property, including the blood sample, was taken from him. Although the sample was clearly marked "Keep Refrigerated," the arresting officer testified that the sample was left on the counter in the dispatch room. The sample was not given to Swanson upon his release. One or two days later the officer found the sample on a counter at the police station. He then placed the sample in the refrigerator.

While the police have no duty to assist an accused in obtaining independent evidence of sobriety, they cannot frustrate such an effort through either affirmative acts or their rules and regulations. The sample was taken from Swanson as part of a standard inventory search. One of the purposes of inventory searches is the safekeeping of prisoners' property. As the United States Supreme Court stated in Illinois v. Lafayette (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65:

> A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person. (Emphasis added.)

Lafayette, 462 U.S. at 646.

Once the sample was taken from Swanson, the police had a duty to see to its safekeeping. The sample should have been

refrigerated. Instead, it was left unrefrigerated for up to two days until the sample turned up in the police station and the arresting officer placed it in a refrigerator. This careless handling of the sample deprived Swanson of his due process right to gather possible exculpatory evidence.

We do not agree with the State's argument that Swanson should have seen that the sample was properly cared for. Had he not been incarcerated and the sample taken from him we would find differently. However, he was deprived of the opportunity to care for the sample because of his incarceration. Once the authorities took control of the sample, shortly after it was drawn, they had a duty to properly care for it. This they did not do. Therefore, Swanson's motion to dismiss should have been granted. Dismissal of the case with prejudice is the appropriate remedy because the State's action precluded a fair trial by preventing Swanson from gathering exculpatory evidence.

Swanson also argues that he should have been advised of his right to post bail in lieu of incarceration. The offenses for which Swanson was arrested were offenses where a peace officer could accept cash bail, yet Swanson was not advised that he could have posted bail that night. Since we have already found a dismissal of the charges is appropriate, we need not address this issue.

We remand this case to the District Court with instructions to grant Swanson's motion to dismiss.

William E. Hunt, Sr.
Justice

We Concur:

Chief Justice

John Conway Harrison

John C. Sheehy

Frank B. Morrison

Justices

Mr. Justice Fred J. Weber dissents as follows:

I agree with the majority opinion when it holds that one accused of a crime involving intoxication has a right to obtain an independent blood test to establish his sobriety regardless of whether he submits to a police designated test. I do not agree with the balance of the opinion.

If the the action of the State had established a clear interference with Mr. Swanson's attempt to obtain exculpatory evidence, then I would agree with the majority. However, I believe a consideration of all of the facts requires a different conclusion.

I will review the pertinent facts, including portions which are mentioned in the majority opinion. On January 9, 1985, at 1:30 a.m., the defendant was stopped by the police and taken to the station. His father came to the station before the blood test was taken and indicated his willingness to pay for the blood test. The defendant was taken to the hospital at his request where the blood sample was drawn. From the hospital the defendant was transferred to the sheriff's office. The arresting officer gave the blood sample to the defendant with the advice that it was the defendant's sample, that he should send it in as soon as possible. The label on the sample stated "Keep Refrigerated." During the booking process at the sheriff's office, the sample was placed on the counter in the booking room. We do not know if the sample was actually taken from the defendant, or was placed on the counter by the defendant. The only evidence establishes that when the officer left the booking room, he saw the sample on the counter.

Approximately 5 hours after the booking, defendant was taken before the Justice of the Peace on the morning of

January 9. At that time bail was set. There is no indication that defendant made any request at that time with regard to the blood sample. Specifically there is no indication that he requested of the police or the Justice of the Peace that the blood sample be sent in. The defendant was released on his own recognizance on January 11. Again, there is no indication that the defendant made any inquiry with regard to the blood sample.

The arresting officer testified that he found the sample at the police station and put it in the refrigerator. He then called the defendant's father and told him that somebody needed to get the sample and send it in for analysis. The defendant's father testified that he received the call on January 12 and that the sample was picked up from the police station on January 13.

I agree with the conclusion of the majority that the police cannot frustrate the effort of an accused to obtain independent evidence of sobriety. I question that the evidence in this case indicates any such conduct. While I agree that it would have been appropriate for the police to have placed the sample in the refrigerator on the morning of January 9, we must balance this against the indifference on the part of the defendant as to the treatment of the sample. He made no request for refrigeration or sending in of the sample at the time of booking, or at the time of appearance before the Justice of the Peace, or at the time that he was discharged on January 11. The defendant's disinterest suggests that he had concluded that he did not desire a test of his blood sample. The only reason that the matter came to the attention of anyone is that the officer was diligent when he observed the sample on January 12 at the police

department. He then attended to the refrigeration and called the defendant's father.

I agree with the conclusion that the police cannot interfere with the gathering of exculpatory evidence. In this case, the facts indicate a total lack of diligence or effort on the part of the defendant. I would not dismiss the case.

Justice.

Chief Justice J.A. Turnage and Justice L.C. Gulbrandson join in the foregoing dissent of Justice Fred J. Weber.

Chief Justice

Justice