No. 96-366

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DENNIS STRAND,

Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephen J. Nardi (argued); Sherlock & Nardi,
Kalispell, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,
Tammy Plubell (argued), Assistant Attorney General,
Helena, Montana

Glen Neier, Kalispell City Attorney, Kalispell, Montana

Argued: October 1, 1997
Submitted:  October 29, 1997
Decided:  December 16, 1997
Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellant Dennis Strand (Strand) appeals from the final judgment and order of the Eleventh Judicial District Court, Flathead County. The District Court accepted Strand's conditional plea of guilty to the charge of driving under the influence of alcohol and sentenced him to 60 days in jail, all but one suspended, upon certain conditions, including his payment of a $350 fine. We reverse and remand.

Strand raises two issues on appeal. We determine that issue 1 is dispositive and, therefore, we need not address issue 2. Therefore, we address whether Strand's due process rights were violated when the arresting officers failed to inform him that he had the right to obtain an independent blood test.

Factual and Procedural Background

In April 1995, Strand was stopped by two officers of the Kalispell Police Department on suspicion of driving under the influence of alcohol. The officers noted that Strand had slurred speech, bloodshot eyes, and smelled of alcohol. Strand had to lean against his vehicle for balance, could not recite the alphabet correctly, and had difficulty following instructions. The officers arrested Strand for driving under the influence of alcohol.

At the Kalispell Police Department, one of the officers said to Strand, "I need you to take a breath test." Strand consented and submitted to the BAC test. The results indicated that Strand had a BAC of .215. Pursuant to the express policy of the Kalispell Police Department, officers read the implied consent advisory form only when the arrested person first refuses to submit to a BAC test. Because Strand consented to the test, neither officer read Strand an implied consent advisory form before asking him to submit to the test or before administering the test. Thus, Strand was not advised that he could obtain an independent blood test for the purpose of determining his blood alcohol concentration.

Strand was charged in the Kalispell City Court with driving under the influence of alcohol, a misdemeanor. Subsequently, he filed a motion to dismiss, arguing that the State had violated his right to due process under the U.S. and Montana constitutions

by failing to inform him that he had a right to obtain an independent blood test. The City Court held that Strand's due process rights were violated because he was not advised of his right to obtain an independent blood test and he did not knowingly and voluntarily agree to take a BAC test. The City appealed to the District Court. Strand again filed a motion to dismiss; however, the District Court denied the motion and accepted Strand's conditional plea of guilty to the charge of driving under the influence of alcohol.

## Standard of Review

The issue of whether Strand's due process rights were violated is a question of law. This Court's standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. State v. Miller (1996), 278 Mont. 231, 233, 924 P.2d 690, 691; Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## Discussion

### I

Every person who operates a motor vehicle in the state of Montana has impliedly consented to submit to a blood or breath test for the purpose of determining the presence or amount of alcohol or drugs in the body. Section 61-8-402(1), MCA. If a person refuses to submit to the test designated by the arresting officer, "a test may not be given, but the officer shall, on behalf of the department, immediately seize the person's driver's license." Section 61-8-402(4), MCA (1993). In addition to the test administered at the direction of the officer, a person may obtain an independent test for determining any measured amount or detected presence of alcohol in the person's system. Section 61-8-405(2), MCA. The right to obtain an independent blood test is both statutory and required by due process. See õ 61-8-405(2), MCA; State v. Swanson (1986), 222 Mont. 357, 722 P.2d 1155.

The Kalispell Police Department uses an implied consent advisory form to explain the substance of Montana's implied consent statutes to the accused. However, the express policy of the department requires that officers not read the form unless or until the accused refuses to submit to the test designated by the officer. If the accused agrees to submit to the test, the officers do not read the consent form, and the accused is never informed of his or her right to obtain an independent blood test. In this case, the arresting officer told Strand that he "needed" him to take a BAC test, and Strand immediately agreed. Thus, at no time was Strand read an implied consent advisory form or otherwise made aware of the implied consent laws of Montana.

Strand argues that the State violated his right to due process of law. He contends that by adopting a procedure by which he was not informed of his right to obtain an independent blood test unless he refused the officer's test, the Kalispell Police Department, through its rules and regulations, denied him his right to obtain exculpatory evidence in direct contravention of this Court's holding in State v. Swanson (1986), 222 Mont. 357, 722 P.2d 1155. The State argues that Swanson did not create an affirmative duty to inform a defendant of his statutorily-created right to obtain an independent test and that the officers' failure to do so did not amount to a violation of due process.

In Swanson, the defendant refused to submit to a breath test, as requested by the arresting officer, but asked to be taken to the hospital for a blood test. Swanson, 722 P.2d at 1156. After blood was drawn, the officer gave the sample to the defendant, informed him that it was his responsibility to have the sample analyzed, and took the defendant to the police station. Swanson, 722 P.2d at 1156. During booking, the sample was taken from the defendant with the rest of his personal belongings and left on a counter in the booking room for two days. Since the blood sample was not properly refrigerated, it could not be analyzed, and the defendant's BAC was never determined. Swanson, 722 P.2d at 1156.

On appeal, the defendant argued that he was denied due process because the State had deprived him of a reasonable opportunity to gather exculpatory evidence. Swanson, 722 P.2d at 1157. This Court held that an accused has a constitutional due process right to obtain exculpatory evidence. Swanson, 722 P.2d at 1157. Further, we held that when a crime involves intoxication, the right to gather exculpatory evidence includes "a right to obtain a sobriety test independent of that offered by the arresting officer," regardless of whether the accused agrees to submit to the officer's test. Swanson, 722 P.2d at 1157. We determined that the defendant's blood sample was taken from him as part of a routine inventory search and held that "[w]hile the police have no duty to assist an accused in obtaining independent evidence of sobriety, they cannot frustrate such an effort through either affirmative acts or their rules and regulations." Swanson, 722 P.2d at 1158.

We agree with the State that this Court's holding in Swanson did not go so far as to create an affirmative duty to inform an accused of his right to an independent blood test. Rather, this Court recognized that an accused has a constitutional due process right

to obtain exculpatory evidence and held that the State cannot act in a manner or adopt any procedure that frustrates this effort. We now take the next step and hold that due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer.

While some citizens of Montana may be aware of the obligation they undertake by driving -- to consent to a blood or breath alcohol test or forfeit their licenses -- most are not aware of their corresponding right to obtain an independent blood test. Because of the evanescent character of blood alcohol evidence, the decision to obtain an independent test must be made in a timely fashion. Montano v. Superior Court (Ariz. 1986), 719 P.2d 271, 275. Therefore, unless the defendant is apprised of this right while the blood can still be analyzed, the right is rendered meaningless.

The accused must be informed of the right to obtain an independent blood test at the time of the arrest. A person accused of driving under the influence of alcohol does not have a right to counsel before submitting to a BAC test and, therefore, is foreclosed from conferring with counsel about his or her rights and duties under Montana's implied consent laws until after consent to the test has been given or withheld. State v. Armfield (1984), 214 Mont. 229, 693 P.2d 1226. Therefore, the arresting officer is the only person in a position to inform the defendant of this right, and we now hold that the officer has an affirmative duty to do so.

The current policy of the Kalispell Police Department is to read an implied consent advisory form to an accused only if he or she has refused to submit to a BAC test. Although the substance of the implied consent advisory form is not before us, the State concedes that had Strand been read this form, he would have been advised of his right to obtain an independent blood alcohol test. The State admits that:

it would have been preferable for the officer to read Strand the contents of the implied consent statutes even though Strand immediately agreed to submit to the breath test when the officer said: "I need you to take a breath test." If the officer had read the contents of the statutes, he undoubtedly would have informed Stand of his right to obtain an independent test at his own expense.

We determine that it is not only preferable for the officer to advise all persons who have been arrested for driving under the influence of their right to obtain an independent blood test, but also required by due process. Before a person can make an intelligent decision as to whether to request an independent blood test, he or she must first be made

aware
that such a test is an option.

II

Having determined that Strand's due process rights were violated, we must determine the appropriate remedy for this violation. Strand urges us to reverse the District Court's denial of his motion to dismiss. The State argues that the more appropriate remedy is to suppress the results of the BAC test. We agree with the State that the appropriate remedy is to suppress the results of the BAC test, which were obtained without first advising Strand of his right to an independent blood test.

As discussed in issue one, Montana's implied consent statutes set forth the obligations of a person operating a motor vehicle in this state and that person's corresponding rights. See õõ 61-8-401 through -422, MCA. The dissent questions the wisdom of suppressing the BAC test results because they were not obtained illegally. However, breathalyzer evidence is unlike most other evidence in that the State's rights to obtain such evidence and to suspend the person's license if he or she refuses the test are derived from statutes, the implied consent law. See õõ 61-8-401 through -422, MCA. That same statutory scheme provides that an accused has a corresponding right to obtain an independent blood test. Section 61-8-405(2), MCA. Fairness thus dictates that the State not be allowed to utilize scientific evidence of intoxication (i.e., tests of a person's blood or breath) if, through omission of the State, the accused is not advised of the right to obtain his or her own scientific evidence of blood alcohol concentration. Juries give great weight to the results of BAC tests, and, thus, "the state cannot be allowed to use evidence which the defendant is unable to rebut because [he] was not apprised of [his] right to independent testing." State v. Turpin (Wash. 1980), 620 P.2d 990, 993.

The dissent argues that although Strand's rights were violated when the officers failed to advise him of his right to obtain an independent blood test, no prejudice resulted because Strand did not challenge the evidence of the officers' observations, the results of the field sobriety tests, or the BAC test results, all of which indicated that Strand was intoxicated. This argument assumes that the sole value of an independent blood test is to rebut the State's evidence. While a blood test may certainly have potential as rebuttal-type evidence, it can also have independent value as compelling scientific evidence, regardless of the evidence introduced by the State.

In other words, it is entirely possible that despite his choosing not to challenge the officers' observations as to breath, eyes, and gait or the results of field sobriety tests, a defendant might produce a blood test conclusively showing that his blood alcohol concentration was below the legal limit. Irrespective of whether Strand challenged

the State's evidence, he was prejudiced when the officer failed to advise him of his right to obtain potentially exculpatory evidence. Thus, we determine that Strand must be given the opportunity for a new trial without the BAC test results.

We recognize that in Swanson, 722 P.2d at 1158, this Court held that "[d]ismissal of the case with prejudice is the appropriate remedy because the State's action precluded a fair trial by preventing Swanson from gathering exculpatory evidence." However, that case differs factually from the instant case and can be distinguished. Unlike Strand, Swanson had refused to take the BAC test. Swanson, 722 P.2d at 1156. The State did not obtain any scientific evidence of intoxication, and, thus, there was no such evidence to suppress. However, in cases in which the State succeeds in obtaining a blood or breath test pursuant to the implied consent law, the appropriate remedy for the State's failure to advise an accused of the corresponding right to obtain an independent blood test is to suppress the results of the State's test. It should be noted that our rationale for suppressing the BAC test results has no application outside the context of a statutory scheme granting both the State and the defendant corresponding rights to obtain a specific form of evidence.

The dissent also notes that õ 61-8-405(2), MCA (1993), provides that a person's failure or inability to obtain an additional blood test "does not preclude the admissibility in evidence of the test or tests taken at the direction of a peace officer." We find that this provision is applicable only where the defendant's failure or inability to obtain a blood test was not the result of an action or omission by the State.

For the above-stated reasons, we reverse the decision of the District Court, order the results of the BAC test suppressed, and remand for a new trial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ WILLIAM E. HUNT, SR.
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER

Justice James C. Nelson concurs in part and dissents in part.

I concur in our discussion and analysis of issues 1 and 2 under I. I dissent, however, with our discussion and with the result reached under II.

Having determined that Strand's right to due process was violated, our next focus, contrary to the majority opinion, should not be on a determination of the appropriate remedy for this violation, but, rather, we should decide whether the defendant has demonstrated any prejudice by reason of the violation of this constitutional right. I conclude that no prejudice has been shown on the record here, and, furthermore, that no legal basis exists on which to suppress the results of the BAC test or to remand for a new trial.

It is black-letter law that þ[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial.þ Section 46-20-701(1), MCA. Moreover, we routinely hold that a criminal conviction will not be reversed unless the error prejudiced the substantial rights of the defendant; that when the record is sufficient to establish the guilt of the defendant, a new trial will not be granted even though there was error, unless it clearly appears that the error complained of actually impaired the defendant's right to a fair trial; that prejudice in a criminal case will not be presumed; and that the defendant must demonstrate prejudice from the record. State v. Huerta (Mont. 1997), ___ P.2d ___, ___, 54 St.Rep. 1133, 1135-36 (citations omitted). We have referred to õ 46-20-701, MCA, and to these well-settled principles of criminal law in cases, too numerous to cite, when affirming convictions where error is shown--even where that error is of constitutional proportion. For example, we recently held in Huerta that a violation of defendant's due process rights involving several different trial issues did not warrant reversal where defendant failed to demonstrate prejudice. Huerta, 54 St.Rep. 1133.

We have defined exculpatory evidence as that which "tends to clear the accused of guilt and vitiate the conviction." State v. Hatfield (1995), 269 Mont. 307, 311, 888 P.2d 899, 902 (citations omitted). While undeniably, the accused is entitled to discover and to gather such evidence, we have also placed upon the defendant a duty to show that, where his right to obtain exculpatory evidence has been violated, there is a reasonable probability that had the information

been provided, the result of the trial or sentencing would have been different. Kills on Top v. State (1995), 273 Mont. 32, 42, 901 P.2d 1368, 1374-75 (citing Kyles v. Whitley (1995), 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490, 506). See also State v. Cox (1994), 266 Mont. 110, 118-19, 879 P.2d 662, 667-68; State v. West (1992), 252 Mont. 83, 87, 826 P.2d 940, 943 (quoting California v. Trombetta (1984), 467 U.S. 479, 488-89, 104 S. Ct. 2528, 2534, 81 L.Ed.2d 413, 422); and State v. Halter (1989), 238 Mont. 408, 412, 777 P.2d 1313, 1316 (quoting Trombetta, 467 U.S. at 488-89).

In the case at bar, the record is completely devoid of even a minimal demonstration by Strand that, had he obtained the independent test to which he was entitled, the evidence would have been, in fact, exculpatory--i.e., that a reasonable probability existed that it would have cleared him of guilt or vitiated his conviction. Strand never challenged the arresting officer's pre-arrest and post-arrest observations indicating that he was intoxicated; he never challenged the field tests which showed the same thing; and he never challenged the results of the BAC test which demonstrated that he was legally intoxicated. In fact, at oral argument, Strand conceded that he could still be convicted of DUI without any test results whatsoever based on other evidence of intoxication.

Had Strand shown that any part of the overwhelming evidence of his intoxication was subject to dispute or attack, he would have a legitimate argument that a reasonable probability existed that the evidence obtained by an independent test would have been exculpatory and that without such evidence his defense was prejudiced. Absent a record of such a challenge, however, there is simply no demonstration here that an independent test would have proved anything other than what has already been clearly shown--i.e., that Strand was legally intoxicated. Nothing in the record of this case shows that a reasonable probability existed that the independent test would have been, in fact, exculpatory. Thus, while Strand's right to due process was violated, he failed to demonstrate prejudice by reason thereof. Accordingly, his conviction should be affirmed.

That said, I also disagree with our decision that the appropriate remedy for the violation of Strand's right to due process is suppression of the results of the BAC test he

voluntarily took.

Suppression of evidence is, of course, mandated where evidence has been obtained by an unlawful search and seizure. Section 46-13-302, MCA. We have recently made it clear that "suppression" is a term used where otherwise relevant evidence is excluded because it has been illegally obtained. See State v. Strizich (Mont. 1997), ___ P.2d ___, ___, 54 St. Rep. 1241, 1244-46.

Absolutely nothing in the record of the case at bar indicates that the BAC test which Strand took at the station-house was obtained unlawfully or illegally. In fact, the record clearly demonstrates the contrary. In accordance with the implied consent statute, õ 61-8-402, MCA, Strand took the breath test when requested to do so by the arresting officer. No evidence shows that the gathering of this evidence was improper, unlawful, illegal or in violation of any of Strand's constitutional rights.

Other than State v. Turpin (Wash. 1980), 620 P.2d 990, the majority cites no authority for the proposition that evidence can be suppressed notwithstanding that the law was not violated in the gathering of that evidence and where the competency of the evidence itself was not challenged. I do not believe that even Turpin is authority for that principal as a general rule, given that the court's decision in that case was rendered in the context of a Washington statute that affirmatively required the peace officer to advise the DUI arrestee of his right to obtain additional chemical tests. Turpin, 620 P.2d at 992. No such statutory obligation for giving advice exists in Montana's statutes. See õõ 61-8-402 and 61-8-405, MCA. In fact, õ 61-8-405(2), MCA (1993), specifically provided that "[t]he failure or inability to obtain an additional test by a person does not preclude the admissibility in evidence of the test or tests taken at the direction of a peace officer. [Emphasis added.]þ

While punishing the police by throwing out legally obtained, competent evidence because the officer failed to advise the defendant of his right to obtain independent evidence of the same type may facially have a sort of "eye for an eye" appeal, such a novel approach is not only legally unsound, but also sets a very dangerous precedent, indeed. Does a defendant now have an argument that the prosecution should not be permitted to use evidence legally obtained from

a crime scene or evidence lawfully taken from the person of a victim because he, the defendant, though having as much right to gather possibly exculpatory, countervailing evidence of the same sort, was unable to do so (a) because the police never told him he had that right and (b) because by the time he learned of this right, the crime scene had been cleaned up or otherwise contaminated or because evanescent evidence from the victim's person has long since disappeared?

The bottom line is that if Strand's constitutional right to due process was violated in this case (and I agree that it was) and if he demonstrated that the violation of this constitutional right prejudiced his defense, then the appropriate remedy is reversal of his conviction and dismissal of the charges against him (as we correctly ruled in Swanson), not the suppression of legally obtained evidence and remanding for a new trial without that evidence.

Strand was obligated to show prejudice--i.e., that had he been timely advised of his right to obtain an independent test, he not only would have taken the test, but also that a reasonable probability existed that the test results would have been exculpatory. Here, since Strand failed to demonstrate any prejudice by reason of the violation of his right to due process, his conviction should be affirmed.

/S/ JAMES C. NELSON

Chief Justice J. A. Turnage joins in the foregoing concurrence and dissent.

/S/ J. A. TURNAGE

Justice Karla M. Gray, dissenting.

I respectfully dissent from the Court's opinion holding that due process requires an arresting officer to inform a DUI arrestee of the right to obtain an independent blood test.

I agree that it is preferable for law enforcement officers to advise DUI arrestees of their statutory right to an independent test. I disagree that the failure to do so rises to a constitutional due process violation. Moreover, I note that the Court cites not a single case from another

jurisdiction in which such a holding has been made.  Indeed, the only case to which this Court
was cited for such a proposition, Montano v. Superior Court Pima County (Ariz. 1986), 719
P.2d 271, subsequently was limited to its specific facts.  See, e.g., State v. Superior Court in
and for County of Yavapai (Ariz. App. 1994), 878 P.2d 1381.

I would follow the North Dakota Supreme Court's lead and hold that a failure to inform
a DUI arrestee of the right to an independent test "does not rise to the level of a constitutional
denial of due process."  See State v. Rambousek (N.D. 1984), 358 N.W.2d 223, 230.  I dissent
from the Court's holding to the contrary.

/S/  KARLA M. GRAY