No. 01-065

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 29

STATE OF MONTANA,

        Plaintiff and Respondent,

v.

ALLEN FRANCIS MINKOFF,

        Defendant and Appellant.

FILED

FEB 2 5 2002

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Wendy Holton (argued), Attorney at Law, Helena, Montana

    For Respondent:

        Robert J. Wood (argued), City Prosecutor, Helena, Montana

Heard: November 27, 2001
Submitted: December 5, 2001
Decided: February 25, 2002

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court

¶1    A jury convicted Allen Francis Minkoff of driving under the influence of alcohol (DUI) and the First Judicial District Court, Lewis and Clark County, sentenced him and entered judgment accordingly. Minkoff appeals.

¶2    Minkoff's first issue on appeal is whether the District Court erred in failing to dismiss the charge against him on grounds that his right to have an independent blood test was frustrated when the arresting officer told him a blood test would result in a higher alcohol reading than the breath test. Because we reverse on this issue, we do not reach the other issues Minkoff raises.

## BACKGROUND

¶3    A Helena, Montana, police officer stopped Minkoff on suspicion of DUI early on the morning of January 31, 1999. Based on his performance on field sobriety tests, Minkoff was arrested and taken to the Lewis and Clark County Detention Center. There, the officer read him the implied consent form, which included a provision informing Minkoff of his right to have a doctor or nurse administer an independent test for alcohol or drugs at his own expense, and asked him to take a breath test.

¶4    After being read the implied consent form, Minkoff asked the officer whether he should get an independent blood test. Initially, the officer replied that he could not advise Minkoff and that an independent blood test would be given only at Minkoff's own expense.

The **following** exchange, **recorded on a** videotape **which is part** of the **record on appeal, then** took place:

> MINKOFF: What should I do? . Is there any difference between the blood test and the breath test?
>
> OFFICER:   Yeah, but the blood test comes out with the exact amount and it's going to be higher than what the breath test is.
>
> MINKOFF: So, it's going to be worse?
>
> OFFICER:   It's going to be higher on the blood test, but the blood test isn't mine. The blood test, if you wanted it, would be . . it would be yours, it would be at your expense.
>
> MINKOFF: Well, thank you for that.

Minkoff then took the breath test, which measured his breath alcohol concentration at .167. He did not request an independent blood test.

¶5      After a jury convicted Minkoff of DUI, the District Court sentenced him and entered judgment. Minkoff appeals.

## DISCUSSION

¶6      Did the District Court err in failing to dismiss the charge against Minkoff on grounds that his right to have an independent blood test was frustrated when the arresting officer told him a blood test would result in a higher alcohol reading than the breath test?

¶7      Minkoff moved the District Court to dismiss the charge against him on the basis that he was denied due process of law. He contended he did not exercise his right to an independent blood test because of the officer's response to his inquiry about whether to get the blood test. The District Court denied his motion and Minkoff asserts error.

¶8 A district court's grant or denial of a motion to dismiss in a criminal case presents a question of law which we review *de novo*. *State v. Sidmore* (1997), 286 Mont. 218, 223, 951 P.2d 558, 562 (citation omitted).

¶9 It is undisputed that a person accused of a criminal offense has a due process right to obtain existing exculpatory evidence. See *State* v. Swanson (1986), 222 Mont. 357, 360, 722 P.2d 1155, 1157. It also is undisputed that, when the charged offense is DUI, the accused has a right to obtain a test of the amount of alcohol in his or her blood independent of the test offered by the arresting officer, without regard to whether the accused has taken or rejected the offered test. *Swanson*, 222 Mont. at 360-61, 722 P.2d at 1157. Finally, it is undisputed that, while a law enforcement officer has no duty to affirmatively assist a person accused of DUI in obtaining an independent blood test, the officer cannot frustrate or impede the person's efforts to do so. See *Swanson,* 222 Mont. at 361, 722 P.2d at 1157-58. Moreover, we have held that the accused must be informed of his or her right to independent testing and that failure to so advise is a due process violation. *State v. Strand* (1997), 286 Mont. 122, 127, 951 P.2d 552, 555.

¶10 In the present case, the District Court relied on *Sidmore* in denying Minkoff's motion to dismiss. There, we clarified and, in fact, limited "the *Swanson* rule" that a DUI accused has a due process right to an independent blood test. We held that two criteria must be established to support an allegation of denial of due process rights with regard to the right to an independent test: (1) the accused must timely request the independent test, and (2) the officer must unreasonably impede the right to the test. *Sidmore*, 286 Mont. at 234-35, 951

P.2d at 568-69. Here, **Minkoffdid not** request the **indcpcndcnt test and**, therefore, **on** the face of it, the District Court did not err in concluding that the *Sidmore* criteria had not been met.

¶11    This case, however, presents yet another factual twist in ourjurisprudence addressing the right to an independent blood test. It is clear on this record that, having been properly advised of his right to the test, Minkoff was considering that test.   He asked the officer for further advice regarding whether to obtain the independent test and the officer initially, and properly, declined to provide such advice. Minkoff again asked for the officer's advice on getting the independent test and the officer twice stated--without equivocation--that the blood test is "going to be higher" than the breath test.  Minkoff ultimately did not request the test.

¶12    On these facts, and given the immediacy of the officer's latter advice, we conclude that the period within which Minkoff could "timely request" the test under the first *Sidmore* criterion had not passed when the officer advised him that the independent blood test would be "higher"--that is, that it would show more alcohol in Minkoff's system than the breath test offered by the officer and taken by Minkoff. To conclude otherwise would be to permit frustration of a person's due process right to an independent test in advance of the person's reasonable opportunity to request the test.

¶13    This brings us, then, to the question of whether the officer unreasonably impeded Minkoff's right to obtain an independent test. Minkoff relies on *Lau* v. *State* (Alaska App. 1995), 896 P.2d 825, in urging that the officer frustrated and unreasonably impeded his right

to obtain exculpatory evidence via an independent blood test. The State of Montana advances *State v. Chastain* (Kan. 19981,960 P.2d 7.56, for the opposite result.

¶14    In *Lau,* a police officer with whom Lau was acquainted happened to be at the police station when Lau was brought in on a charge of driving under the influence. On appeal from his conviction, Lau argued that the state interfered with his right to an independent blood test because the officer dissuaded him from taking a blood test--telling him the alcohol content measure would be higher than in the breath test--after Lau had already told the arresting officer he wanted the blood test performed. The appeals court reversed Lau's conviction, reasoning that, even if the officer were acting in good faith, "the fact remains that [he] dissuaded Lau from exercising his rights." *Lau*, 896 P.2d at 828. "[A] government officer having custody of an arrested driver cannot attempt to dissuade the driver from exercising the right to an independent blood test." *Lau, 896* P.2d at 828.

¶15    In the Kansas case, Chastain was charged with involuntary manslaughter after a motor vehicle accident which resulted in another person's death. A jury returned a verdict of guilty of the lesser included offense of driving while under the influence of alcohol.  Chastain appealed, arguing that the arresting officer unreasonably prevented him from taking a blood alcohol test he requested both before and after the breath test. The arresting officer had informed Chastain that he could obtain an additional test and that the officer would transport him to obtain one, but also advised that a blood test would register a higher concentration of alcohol. The Kansas Supreme Court addressed Kansas statutes and cases, as well as cases from other jurisdictions, and held that under the particular facts and circumstances of that

6

case, the officer's statement **that** a blood test would register higher, without any further evidence of unreasonable interference or coercion. did not establish a deprivation of Chastain's right to further testing. *Chastain*, 960 P.2d at 761. *Chastain* does not include any discussion of the constitutional ramifications relating to the right to obtain exculpatory evidence.

¶16 We are persuaded that *Lau* better reflects the law in Montana than does *Chastain.* We have held that, while police have no duty to assist an accused in obtaining independent evidence of sobriety, "they cannot frustrate such an effort through either affirmative acts or their rules andregulations." Swanson, 222 Mont. at 361-62, 722 P.2d at 1158 (see *also* § 61-8-405(2), MCA, "The peace officer may not unreasonably impede the person's right to obtain an independent blood test"). Here, the officer's repeated statements that the blood test would show a higher blood alcohol level, albeit well-intentioned, were affirmative acts which would frustrate, if not obliterate, the intention of any rational arrestee to obtain an independent blood test. Rare, indeed, would be the person who would persist in asking for an independent blood test after being advised--twice--that the amount of alcohol in the blood test result would show as higher than the amount in the offered breath test. We conclude that the officer's advice frustrated and unreasonably impeded Minkoff's due process right to the independent blood test.

¶17 The final question before us is the appropriate remedy for the violation of Minkoff's due process rights. In his opening brief, Minkoff requests a remedy of either dismissal of the

7

charge against him or suppression of the results of the breath test. During oral argument, he urged dismissal.

¶18  In *Swanson*, 222 Mont. at 359,722 P.2d at 1156, the defendant refused the breath test offered by the state, and requested and obtained an independent blood test.    The blood sample was not analyzed because law enforcement failed to refrigerate it during Swanson's post-arrest incarceration and, as a result, no analysis was possible. The trial court denied Swanson's motion to dismiss, which was based on a denial of his due process rights. We held on appeal that the state's actions (or, more appropriately, inactions) frustrated Swanson's right to obtain exculpatory evidence and held, without further discussion, that "[d]ismissal of the case with prejudice is the appropriate remedy because the State's action precluded a fair trial by preventing Swanson from gathering exculpatory evidence." Swanson, 222 Mont. at 362, 722 P.2d at 1158.

¶19  In *Strand,* the defendant took the offered breath test and was not advised of his right to an independent test because the police department's policy was to read the implied consent form containing information about the right to an independent test only if the defendant agreed to submit to the breath test. As stated above, we held on appeal that law enforcement officers have an affirmative duty to inform a person arrested for DUI of the right to an independent blood test. *Strand*, 286 Mont. at 127, 951 P.2d at 555. We further held that suppression of the breath test was the appropriate remedy on the basis that, if the state frustrated the defendant's right to obtain exculpatory scientific evidence of sobriety via a blood test, it could not be allowed to use its own scientific evidence of intoxication--the

8

breath test--against the defendant. *Strand*, 286 Mont. at 127-28, 951 P.2d at 55 j-56. We distinguished the dismissal remedy afforded in *Swanson* on the grounds that, there, the state did not obtain any scientific evidence from the defendant--that is, the defendant refused the breath test--so there was no evidence to suppress. *Strand*, 286 Mont. at 129, 951 P.2d at 556. We concluded that where the state had its scientific evidence, but had frustrated the defendant's ability to obtain similar exculpatory evidence, suppression was appropriate. *Strand*, 286 Mont. at 129, 951 P.2d at 556.

¶20    On the face of it, the *Strand* suppression remedy appears to be applicable here. As in *Strand*, the State in the present case obtained its scientific evidence via the breath test Minkoff took. Minkoff did not obtain his scientific exculpatory evidence because his right to do so was frustrated by the officer. We conclude, however, that the remedy afforded in *Strand* is manifestly incorrect.

¶21    At the outset, it is appropriate to observe again that the dismissal remedy afforded in Swanson was not based on a legal analysis. The defendant had moved for dismissal, the district court had denied the motion, and the defendant appealed that denial. Nothing in Swanson suggests that an issue regarding the appropriate remedy was raised there.

¶22    In *Strand*, the issue of dismissal, as urged by the defendant, versus suppression, as argued by the state, was squarely before us. As discussed above, we opted for suppression and, in doing so, distinguished *Swanson* on the facts regarding whether the state's offered breath test had been taken or refused. In discussing the appropriate remedy in *Strand*, however, we made several statements on which we did not follow through. In that regard,

while we relied on a Washington Supreme Court case for the proposition that the state cannot be permitted to use scientific evidence of intoxication which the defendant is unable to rebut because he was not apprised of his right to independent testing, we also stated that, while independent blood test results have value as rebuttal-type evidence to the state's evidence, such results also "have independent value as compelling scientific evidence, regardless of the evidence introduced by the State." *Strand,* 286 Mont. at 128, 951 P.2d at 555 (citation omitted). We discussed the possibility that a defendant might elect not to challenge potentially intoxication-related observations by the officer or field sobriety test results, but might produce--if given the opportunity--a scientific blood test conclusively showing a blood alcohol concentration below the legal limit. *Strand,* 286 Mont. at 128, 951 P.2d at 555-56. Had we followed through on these statements, rather than limiting our focus to the question of "like evidence," dismissal would have been the appropriate remedy.

¶23 Here, the State admitted Minkoff's .167 blood alcohol content as evidence during the jury trial. It also presented the arresting officer's testimony and videotape evidence on Minkoff's performance on field sobriety tests: he did not successfully recite the alphabet after the letter "T"; he swayed during the one-legged stand and put his hand on a door as a brace; and, during the walk and turn test, he stepped off the line, nearly fell over, and took more steps than he was instructed to take. Suppressing the State's breath test and allowing a new trial would leave Minkoff unable to rebut the field sobriety test evidence through an independent blood test--the right to which he was effectively denied. We conclude

10

suppression of the breath test results is insufficient to remedy the deprivation of that right and, accordingly, we overrule the remedy set forth in *Strand*.

¶24 We hold, therefore, that the District Court erred in failing to dismiss the charge against Minkoff on grounds that his right to have an independent blood test was frustrated when the arresting officer told him a blood test would result in a higher alcohol reading than the breath test.

¶25 Reversed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

11

Justice Patricia O. Cotter dissents

¶26    In *State v. Sidmore* (1997), 286 Mont. 218, 951 P.2d 558, we specifically stated that in order to support an allegation of a violation of a defendant's due process rights, two criteria must be met. First, the defendant must have timely claimed the right to an independent blood test. Second, a law enforcement officer must have " unreasonably impeded the defendant's right to obtain an independent blood test." *Sidmore,* 286 Mont. at 234-35, 951 P.2d at 568-69. In my judgment, neither of these criteria have been satisfied here.

¶27    First, the Court admits that Minlcoff did not timely claim the right to an independent blood test. The majority escapes the application of this criteria, however, by saying that the time had not passed within which Minkoff could have timely requested the test under the *Sidmore* criterion. To my mind, the time frame is irrelevant. The cases upon which *Sidmore* is predicated clearly contemplate both that the defendant make a request for the right to have a blood test, and that an officer then unreasonably impede that right. The officer in this case did not impede an asserted right, because when Minkoff solicited the officer's advice, he had not yet decided whether he wanted to take a blood test or not. In other words, the officer could not have impeded a right not yet asserted.

¶28    In *Sidmore, we* made it clear that the right must both be asserted and then impeded. We said:

> Accordingly, to clarify our rule in *Swanson* that one accused of a crime

12

involving intoxication is entitled to obtain an independent blood test, we hold that the rule applies only when (1) the defendant has timely claimed the right to an independent blood test, and (2) a law enforcement officer has unreasonably impeded the defendant's right to obtain an independent blood test. Both criteria must be satisfied in order to support an allegation of a violation of a defendant's due process rights. The Swanson rule will not apply if the defendant either fails to timely request the independent blood test, or the independent blood test is unavailable through no unreasonable acts of law enforcement.

*Sidmore,* 286 Mont. 234-35, 951 P.2d 568-69. If we were to properly follow the clear rule announced in *Sidmore,* our inquiry would end once we determined that the defendant never timely claimed the right to an independent blood test. We would never reach the second criterion.

¶29 Moreover, I find it significant that the facts were starkly different in the *Lau* case, upon which the majority relies for the ultimate conclusion it reaches here. Lau was given a "notice of right to independent test" form following his arrest, and specifically indicated thereon that he chose to have blood drawn for a test at his own expense. Lau followed this written assertion of his right with a verbal assertion of the right, and in response, the State arranged to summon a nurse to draw Lau's blood. It was not until after the nurse was summoned that Lau changed his mind, as a result of the informal conversations he had with a police officer. So, the first criterion of our *Sidmore* test was unequivocally met in *Lau,* whereas it was not met here.

¶30 Second, whatever Minkoff read into the police officer's statements made to him, the officer did not "unreasonably impede" Minkoff's right to obtain an independent blood test,

13

as the second criterion of *Sidmore* requires.

¶31     The Court here concedes that the *Sidmore* Court clarified the "*Swanson* rule," established in the case of *State* v. *Swanson* (1986), 222 Mont. 357, 722 P.2d 1155. In Swanson, we concluded that the State interfered with Swanson's attempt to obtain and utilize an independent blood test after he was charged with driving under the influence of alcohol. We noted in Swanson that, after Swanson requested that a blood sample be taken, he was transported to the hospital for those purposes. However, after he was returned to the sheriffs office, the blood sample, clearly marked "keep refrigerated," was left unrefrigerated for two days, resulting in its questionable validity. As a result, the sample was never analyzed, depriving Swanson of potential exculpatory evidence. We concluded that since the State's conduct precluded Swanson from gathering exculpatory evidence, dismissal of his case was appropriate. In answering the question of whether the State had interfered with Swanson's attempt to obtain his independent test, we relied upon the California Supreme Court case, *In re Martin* (Cal. 1962), 374 P.2d 801. The California Supreme Court concluded in *Martin* that duly constituted authorities could not hamper or interfere with a defendant's efforts to obtain a sampling of his own blood. The court said:

> We are persuaded to such conclusion in any instance where the conduct of the authorities, whether through affirmative action or by the imposition of their rules and regulations, imposes any material obstacle in the path of the accused.

*Martin,* 374 P.2d at 803. In *Swanson,* we concluded that abdicating their responsibility to put the blood sample in safe keeping was such an obstacle.

14

¶32    Here, the State took no affirmative action. Nor did it impose any "material obstacle" in Minkoff's path. The State did not deny Minkoff his right to take a blood test (*State, City of Bozeman v. Peterson* (1987), *227* Mont. *418,739 P.2d 958, overruled on othergrounds by State* v. *Waters,* 1999 MT 229,296 Mont. 101,987 P.2d 1142); nor did the State advise Minkoff he could take a blood test and then refuse to take him to the hospital (City of *Whitefish* v. *Pinson* (1995), 271 Mont. 170, 895 P.2d 610); or invalidate the results of the blood test by its carelessness (Swanson). Minkoff was specifically advised that he had the right to have a doctor or nurse administer an independent test for alcohol at his own expense. Upon hearing this, the colloquy set forth at ¶ 4 of the majority Opinion took place. The officer initially declined to give his opinion on the advisability of taking a blood test until after he was prodded to do so by Minkoff. The officer did not, however, take affirmative action or impose a material obstacle to the taking of the test.

¶33    Construing the police officer's solicited comment to Minkoff as an 'unreasonable impediment" to Minkoff's right to obtain an independent blood test completely eviscerates the rule we announced in Swanson and subsequently implemented in *Peterson, Pinson, Sidmore,* and other cases too numerous to mention. I believe that, without saying so, we have effectively overruled *State* v. *Sidmore* and the substantial body of case law upon which *Sidmore* relies. I would follow the letter and spirt of *Peterson, Swanson* and *Sidmore*, and conclude that the District Court did not err in refusing to dismiss the charges against Minkoff. I would accordingly have reached the remaining issues raised by Minkoff in his

appeal.

_____
Patricia Cotter
                                    Justice

Justice W. William Leaphart joins in the foregoing dissent.

_____
W. William Leaphart
                                    Justice