FILED

August 4 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0275

DA 14-0275

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 223N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOHN HARVEY HOOTS,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 12-0477
Honorable Gregory R. Todd, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          John Harvey Hoots (self-represented); Shelby, Montana

          Wade Zolynski, Chief Appellate Defender, James Reavis, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Julie Patten,
Deputy County Attorney; Billings, Montana


Submitted on Briefs: July 15, 2015
Decided: August 4, 2015

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1　　Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2　　John Harvey Hoots appeals the order and judgment of the Thirteenth Judicial District Court, Yellowstone County, which sentenced him to 30 years at Montana State Prison (MSP), and designated him a persistent felony offender, for the crime of operating a motor vehicle with a blood alcohol concentration of 0.08% or more (DUI per se), a felony. This charge was Hoots' fourth felony charge for driving under the influence of alcohol or drugs (DUI) and tenth lifetime DUI.

¶3　　Hoots was arrested for DUI on July 31, 2012, after he drove away from a confrontation with a neighbor, Daniel Belmarez. Belmarez saw Hoots drop his pants and expose his genitals and buttocks while standing across the street from Belmarez's house. Belmarez yelled at Hoots to put his clothes on and called 911. Belmarez testified that Hoots was visibly intoxicated. Hoots walked away, but later returned and began arguing with Belmarez's nephew. Belmarez, who was then inside with his mother, saw Hoots gesture as if he was armed. Belmarez's mother called 911 because she suspected Hoots had a gun.

¶4　　Officers Ross, Becker, and Frank responded to the call. The officers and Belmarez saw Hoots drive away in a pickup truck. The officers followed Hoots and

pulled him over. Believing Hoots was armed, the officers approached the pickup with guns drawn, and ordered Hoots to exit the pickup. Hoots smelled of alcohol, and his speech was slurred. Hoots was unarmed, and the officers did not find a weapon in the pickup. The officers discovered Hoots' driver's license was revoked, and they arrested Hoots and took him to the Yellowstone County Detention Facility's DUI processing center for further investigation.

¶5 Officer Ross conducted the DUI investigation at the DUI processing center, accompanied by Officers Frank and Becker. Hoots was given the Implied Consent Advisory, which includes the right to have an independent blood test completed by a doctor or a nurse after officers complete their evaluation. Hoots refused to take a breath test, and requested an independent blood test. After the Implied Consent Advisory was completed, Hoots stated, "But I request a blood test from Deaconess or St. Vincent's."

¶6 Officer Ross applied for a search warrant for a sample of Hoots' blood. While Officer Ross was applying for the warrant, Hoots stated, "I volunteer one. I request one. Can I have a phone book?" Officer Becker, who was filming the evaluation, refused to give Hoots a phone book. Hoots stated again, "I'd like a blood test." Officer Ross returned and explained that he had a warrant for a blood test. Hoots responded, "Cool. Can I have a phone book to call my doctor?" Officer Ross refused the request for a phone book. Hoots stated, "No phone call? No lawyer?" and Officer Becker responded, "Not right now." A blood sample was completed pursuant to the search warrant by Chris Dumontier, LPN, with assistance from other officers. Hoots stated that his blood sample was "going to blow the scale right out the roof."

3

¶7 Officer Ross then advised Hoots of his Miranda rights. Hoots declined to be interviewed and requested an attorney. Officer Ross said, "Let's get you next door and get you booked in." After Hoots was handcuffed, the following exchange took place:

> Officer Ross: Mr. Hoots, we're going to go right this way, out the way we came. We'll get you booked in, and you can make that phone call that you've been looking for.
>
> Hoots: Oh, you let me call a lawyer?
>
> Officer Ross: You can call whoever you want.

¶8 Hoots argues on appeal that he was denied his right to an independent blood test. Hoots concedes this issue was not properly raised below and therefore requests we exercise plain error review of this issue. This Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process. *State v. Taylor*, 2010 MT 94, ¶ 14, 356 Mont. 167, 231 P.3d 79.

¶9 Hoots argues that the State's failure to allow him to obtain an independent blood test was a violation of his due process right to obtain exculpatory evidence, and therefore the charge should be dismissed according to § 61-8-405(2), MCA, and *State v. Swanson*, 222 Mont. 357, 722 P.2d 1155 (1986). Under § 61-8-405(2), MCA: "In addition to any test administered at the direction of a peace officer, a person may request that an independent blood sample be drawn by a physician or registered nurse." In *Swanson*, a defendant arrested for suspected DUI obtained an independent blood test from a

4

physician, but the police did not properly refrigerate the sample making it unusable for determining blood-alcohol content. *Swanson*, 222 Mont. at 359-60, 722 P.2d at 1156-57. We held that the destruction of the sample by the police was a violation of Swanson's due process right to obtain exculpatory evidence, and therefore we instructed the district court to dismiss the charge against Swanson. *Swanson*, 222 Mont. at 362, 722 P.2d at 1158.

¶10     We noted in *Swanson* that "[w]hile the police have no duty to assist an accused in obtaining independent evidence of sobriety, they cannot frustrate such an effort through either affirmative acts or their rules and regulations." *Swanson*, 222 Mont. at 361-62, 722 P.2d at 1158. We have also held, however, that "the rule in *Swanson* will apply only if the defendant can establish that he made a timely request for an independent test and that a law enforcement officer unreasonably impeded his right to obtain the test." *State v. Sidmore*, 286 Mont. 218, 234, 951 P.2d 558, 568 (1997).

¶11     As soon as Officer Ross finished processing Hoots, he told Hoots, "You can make that phone call that you've been looking for." In response to Hoots' inquiry, "Oh, you let me call a lawyer?" Officer Ross responded, "You can call whoever you want." Hoots did not contact a doctor or nurse to obtain an independent blood test, although he could have done so. The officers did not unreasonably impede Hoots' right to an independent blood test. Therefore, there was no violation of Hoots' fundamental due process right to obtain exculpatory evidence. This case is not appropriate for application of the plain error doctrine.

¶12     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion

of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Having reviewed the briefs and the record on appeal, we conclude that the Appellant has not met his burden of persuasion. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE