DA 08-0302

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 281

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

STEFANIE ANN SCHAUF,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 06-313(C)
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          George B. Best, Darin K. Westover, Paul A. Shae,
Kalispell, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

          Ed Corrigan, Flathead County Attorney; Lori Adams, Deputy
County Attorney, Kalispell, Montana

Submitted on Briefs:  June 17, 2009

Decided:  August 25, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Stephanie Ann Schauf appeals from the Judgment and Sentence of the Eleventh Judicial District Court, Flathead County that followed Schauf's jury conviction of the offenses of negligent homicide, negligent vehicular assault and criminal endangerment, all felonies. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    At about 1:30 a.m. on July 1, 2006, on U.S. 93 between Whitefish and Kalispell, Schauf drove her car into the rear of a pickup while traveling at more than 80 miles per hour. The impact caused the pickup to leave the highway and roll over. A passenger in the pickup was killed and the two other occupants were injured, one seriously.

¶3    Schauf passed Jereme Kolden's vehicle before the wreck and he called 911 when he came to the crash site. Kolden reported that Schauf's car passed him driving very fast and erratically, and that he thought the driver was drunk. Schauf's car went off the road after the impact and hit a tree. Occupants of another vehicle that stopped pulled Schauf from her car just before it exploded in flames.

¶4    An accident reconstruction expert testified at trial that neither the pickup nor Schauf's car had braked prior to the crash. Schauf's car was straddling the outside fog line and was veering back into the driving lane at the time of impact. The pickup was traveling at 65-68 mph at the time of impact and Schauf's car was traveling at 80-87 mph.

2

¶5    Individuals who had contact with Schauf after the crash testified that she smelled of alcohol, was slurring her words and appeared to be intoxicated. She was combative, uncooperative and swore profusely at times. A patrol car video depicting her behavior and speech at the scene was shown to the jury.

¶6    Schauf was taken to the Kalispell Regional Medical Center after the crash for examination and observation for possible injury. Highway Patrolman Martin Schrock asked Schauf whether she would consent to a blood sample. She did not answer, but curled into a fetal position and cried. Medical personnel drew blood from her for a blood alcohol test at the trooper's request. That sample was tested by the State Crime Laboratory and showed a blood alcohol content of .310. The Crime Lab preserved the sample of Schauf's blood and stored it safely in a condition that it could be tested again in the future. The emergency room physician treating Schauf ordered another blood test later that night for treatment purposes. It showed a similar result—a blood serum alcohol level of .340, equivalent to a whole blood alcohol level of .310. The District Court suppressed evidence of the initial blood test because the trooper had not first informed Schauf of her right to obtain an independent blood test. The District Court admitted the result of the second blood test over objection.

¶7    Schauf was convicted after a jury trial of negligent homicide, negligent vehicular assault, and criminal endangerment. She was sentenced to three concurrent sentences of twenty years with ten years of each suspended. We affirm.

## ISSUES

¶8    Schauf presents issues for review which we restate as follows:

¶9     Issue One: Whether the District Court was required to dismiss the charges against Schauf after suppressing the results of the State's blood alcohol test.

¶10    Issue Two: Whether the District Court properly limited impeachment of witness Kolden.

¶11    Issue Three: Whether the District Court properly admitted evidence from hospital records of Schauf's blood alcohol content.

¶12    Issue Four: Whether the District Court properly admitted a patrol car video of Schauf taken the night of the accident.

## STANDARD OF REVIEW

¶13    The denial of the motion to dismiss is a question of law subject to de novo review. *State v. Minkoff*, 2002 MT 29, ¶ 8, 308 Mont. 248, 42 P.3d 223. This Court reviews denial of a motion to suppress evidence to determine whether the factual findings are clearly erroneous and whether the findings were correctly applied as a matter of law. *State v. Fregien*, 2006 MT 18, ¶ 8, 331 Mont. 18, 127 P.3d 1048. The decision on a motion in limine is reviewed for abuse of discretion. *State v. Dunning*, 2008 MT 427, ¶ 21, 347 Mont. 443, 198 P.3d 828.

## DISCUSSION

¶14    *Issue One: Whether the District Court was required to dismiss the charges against Schauf after suppressing the results of the State's blood alcohol test.*

¶15    Highway Patrol Trooper Martin Schrock responded to the crash. Schauf refused to allow medical personnel to treat her at the scene but later told the trooper that she was injured and asked him to take her to the hospital. At the hospital Schauf was curled into

4

the fetal position and crying; at other times she was combative and loud. The trooper suspected that Schauf was driving under the influence and requested that medical personnel take a blood sample from her so that it could be tested at the State Crime Lab for alcohol content. Schauf moved to suppress the results of that test because the trooper had not advised her at the time the blood was drawn that she had a right to obtain her own independent blood test, as provided in § 61-8-405(2), MCA. The State conceded that Schauf had not been advised and that the blood test ordered by the trooper should be suppressed. The District Court granted Schauf's motion and suppressed the results of the testing done on the blood that had been drawn at the trooper's request.

¶16 Schauf moved to dismiss all charges against her on the ground that the trooper did not advise her that she was entitled to obtain her own independent blood test. The District Court denied that motion and this Court denied Schauf's motion to take supervisory control over the proceedings.

¶17 Any person operating a motor vehicle in Montana is deemed to have given implied consent to the testing of his or her breath or blood for the presence of drugs or alcohol, but if the person refuses to submit to a test requested by an officer, the test may not be conducted. Section 61-8-402, MCA. A person suspected of driving under the influence has the right to obtain an independent blood test in addition to any blood or breath test obtained by the officer:

> In addition to any test administered at the direction of a peace officer, a person may request that an independent blood sample be drawn by a physician or registered nurse for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person. The peace officer may not unreasonably

5

impede the person's right to obtain an independent blood test. The officer may but has no duty to transport the person to a medical facility or otherwise assist the person in obtaining the test. The cost of an independent test is the sole responsibility of the person requesting the test. The failure or inability to obtain an independent test by a person does not preclude the admissibility in evidence of any test given at the direction of the peace officer.

Section 61-8-405(2), MCA. In *State v. Strand*, 286 Mont. 122, 951 P.2d 552 (1997) this Court held that an accused charged with DUI has a due process right to obtain exculpatory evidence that requires the arresting officer to advise the accused of the statutory right to obtain an independent blood test. Where the State obtains a blood sample for testing under the implied consent law, § 61-8-402, MCA, the remedy for failure to also advise the accused of the right to an independent test is to suppress the result of the State's test. *Strand*, 286 Mont. at 129, 951 P.2d at 556.

¶18 Additionally, this Court has held that where police affirmatively impede the right of a person accused of DUI to obtain an independent blood test, the remedy is dismissal of the charges. *State v. Swanson*, 222 Mont. 357, 722 P.2d 1155 (1986); *Minkoff*, ¶ 23. Schauf urges this Court to apply the dismissal remedy ordered in *Swanson* and *Minkoff* based upon the failure of the officer to advise her that she had the right to an independent blood test.

¶19 Schauf was charged with and convicted of three felonies: negligent homicide (§ 45-5-104, MCA); negligent vehicular assault (§ 45-5-205, MCA); and criminal endangerment (§ 45-5-207, MCA). Schauf was not charged with DUI (§ 61-8-401, MCA). Of the three offenses, only negligent vehicular assault contains driving under the

6

influence of alcohol or drugs as a statutory element of the offense. Section 45-5-205(1), MCA, provides:

> A person who negligently operates a vehicle . . . while under the influence of alcohol, a dangerous drug, any other drug, or any combination of the three, as provided for in 61-8-401(1), and who causes bodily injury to another commits the offense of negligent vehicular assault.

This Court has held that the implied consent provisions of Title 61, Ch. 8, pt. 4, MCA, apply when a person is charged with negligent vehicular assault, because it specifically relates to the statutes governing DUI. *State v. Stueck*, 280 Mont. 38, 43, 929 P.2d 829, 832-33 (1996).

¶20 The other offenses for which Schauf stands convicted—negligent homicide and criminal endangerment—contain no express statutory element of the offense tied to the DUI provisions of Title 61, Ch. 8, pt. 4. We held in *Stueck* that the DUI statutes do not apply to a charge of negligent homicide because no element of that offense "relates in any way to operating a vehicle while under the influence." *Stueck*, 280 Mont. at 44, 929 P.2d at 833. *See also State v. Thompson*, 207 Mont. 433, 437-38, 674 P.2d 1094, 1096 (1984). Since proof of DUI is not an element of negligent homicide or criminal endangerment, the DUI testing provisions of Title 61, Ch. 8, pt. 4, MCA, do not apply to these charges. Therefore, the failure to advise Schauf of her right to an independent blood test under § 61-8-405, MCA, provides no basis for dismissal of those charges. Her convictions for negligent homicide and for criminal endangerment did not depend upon proof of compliance with the requirements of Title 61 and those convictions are valid and are not affected by this issue.

¶21 Moreover, as to Schauf's conviction of negligent vehicular assault, this Court's prior rulings on the use of State-obtained blood samples are distinguishable. First, the results of the blood test obtained at the direction of the trooper were suppressed and were not used against her at trial. Second, as discussed below, the blood alcohol test results that were admitted at trial were derived from a blood sample drawn at the direction of Schauf's treating physician in the emergency room. To the extent that the conviction for negligent vehicular assault rested upon blood alcohol test results, those results were obtained independently of State action and independently of the DUI implied consent provisions of Title 61, Ch. 8, pt. 4, MCA.

¶22 In *Minkoff*, a DUI case, this Court overruled *Strand* to the extent that *Strand* allowed suppression of a blood test obtained by an officer who had not informed the accused of the right to an independent blood test, but declined to require dismissal of the charges. In *Minkoff* the officer had informed the accused of the right to an independent blood test, but then frustrated the exercise of that right by advising the accused that a blood test would yield a higher blood alcohol result than the breath test that had been given. This Court held that the proper remedy was dismissal of the charge and overruled *Strand* to the extent that it provided a remedy of suppression of the State's blood test results.

¶23 Prior to *Minkoff*, the Court held in *Swanson* that the proper remedy was dismissal when an officer impedes an accused's right to an independent blood test. *Swanson* was sufficient and factually similar precedent to uphold dismissal of the charges in *Minkoff*. We did not need to overrule *Strand*, and we take this opportunity to clarify these cases

8

with respect to this issue. We agree with the holding in *Swanson* that the proper remedy is dismissal of a DUI, or a specifically DUI-related charge like negligent vehicular assault, where the officer actually impedes the accused's right to an independent blood test. However, where an officer neglects to advise the accused of the right to an independent test, *Strand* is still valid law. The appropriate remedy in such a case is suppression of the State-obtained blood alcohol test results.

¶24 This approach is consistent with other decisions from this Court outside the DUI context dealing with an accused's due process right to obtain exculpatory evidence. Where law enforcement officers intentionally suppress exculpatory evidence, there is per se a violation of the accused's right to due process and dismissal is warranted. *State v. Weaver*, 1998 MT 167, ¶ 54, 290 Mont. 58, 964 P.2d 713. However, when law enforcement negligently suppresses exculpatory evidence there is no due process violation unless the accused establishes that the evidence is "material and of substantial use, vital to the defense and exculpatory. *Weaver*, ¶ 54; *State v. Cox*, 266 Mont. 110, 118, 879 P.2d 662, 667 (1994). In *State v. Halter*, 238 Mont. 408, 777 P.2d 1313 (1989), the defendant was charged with theft of cattle and illegal branding. He wanted to have an expert examine the animal in question, but it had been sold and disappeared into the food chain. This Court held that Halter had made a sufficient showing, producing facts and expert testimony, that the negligently destroyed evidence was material and exculpatory to his defense. Dismissal of the charges was the appropriate remedy. *Halter*, 238 Mont. at 413, 777 P.2d at 1317.

9

¶25 However, in the DUI situation where the officer does not actually impede the accused's right to a test, but only fails to advise the accused of the right to an independent test, we hold that the suppression remedy in *Strand* is better-reasoned and should be applied. It is consistent with our other decisions holding that there is no per se due process violation unless there is intentional interference with the right to obtain exculpatory evidence. This Court may not reverse a conviction unless there was prejudicial error and the defendant's substantial rights were affected. Section 46-20-701, MCA; *State v. Woods*, 285 Mont. 124, 129, 947 P.2d 62, 64-65 (1997); *State v. Ferguson*, 2005 MT 343, ¶ 83, 330 Mont. 103, 126 P.3d 463; *State v. Tennell*, 2007 MT 266, ¶ 31, 339 Mont. 381, 170 P.3d 965.

¶26 Dismissal of criminal charges is a severe sanction. *U.S. v. Morrison*, 449 U.S. 361, 366-67, 101 S. Ct. 665, 669 (1981) It is a remedy that has been limited to government misconduct characterized as "egregious" or "outrageous." *See, U.S. v. Russell*, 411 U.S. 423, 431-32, 93 S. Ct. 1637, 1642-43 (1973). Dismissal is not the remedy of choice for the failure of the prosecution to disclose exculpatory evidence in violation of due process under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963) where the approved remedy was a new trial. Nor is the dismissal of charges the remedy provided for law enforcement failure to warn a defendant of the right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966); *State v. Cartwright*, 200 Mont. 91, 98, 650 P.2d 758, 761 (1982). Consequently, where the officer obtains a blood or breath sample but fails to advise the accused of the right to an independent test, the proper result is suppression of the results of the law enforcement

test. In this case the District Court suppressed the State's blood test, and we hold that was the proper result.

¶27 Moreover, there was substantial other evidence of Schauf's intoxication. The video taken of her at the crash site, discussed below, was, as the District Court found, "highly probative" of Schauf's condition at the time of the crash. Third-party witnesses who testified at trial described Schauf's behavior, demeanor and appearance that night, all of which were consistent with significant intoxication. This evidence alone, without the hospital blood sample results, would have been sufficient to support a finding by the jury that Schauf was driving under the influence for purposes of negligent vehicular assault.

¶28 Last, it is clear that if Schauf had ever wanted an additional independent test to verify her blood alcohol content, she could have obtained one. In the District Court proceedings the State presented evidence that the blood sample obtained by the trooper had been securely and safely stored and was available for independent testing at any time prior to trial. For whatever reason, Schauf chose not to have the blood sample independently tested.

¶29 Dismissal under the circumstances would have been an extreme measure, and the District Court properly refused to dismiss the charges against Schauf.

¶30 *Issue Two: Whether the District Court properly limited impeachment of witness Kolden.* Jereme Kolden testified at trial that he was driving between Whitefish and Kalispell the night of the accident and was passed by Schauf's car. He testified that Schauf was driving "real quick" and almost side-swiped him. Kolden later came upon

11

the crash site and called 911, and the tape of the 911 call was introduced into evidence. During the call Kolden told the dispatcher that Schauf's car was "flying by me" and that the driver was drunk.

¶31 More than a year after the accident Kolden was charged with fraudulently obtaining prescription medication. The charges were pending but not resolved at the time he testified at Schauf's trial. The District Court granted the State's motion in limine to prohibit inquiry into the pending charges against Kolden, but allowed the defense to question him about his drug use on the night of the crash. Schauf argues that the ruling violated her right to a fair trial by limiting her cross-examination of Kolden.

¶32 The Montana Rules of Evidence provide:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

M. R. Evid. 608(b). Under Rule 608, testimony about the pending charges against Kolden was not admissible unless the District Court exercised discretion to allow the testimony as an exception. The District Court declined to do so.

¶33 The District Court noted that Kolden's testimony was very limited. The subsequent charge against Kolden was unrelated to Schauf's case and did not bear upon his ability to observe on the night of the accident or to recall and testify to the circumstances. The defense was allowed to extensively cross-examine the witness about

his drug use and whether he was under the influence at the time of the crash. In addition, the court expressly found that there was no evidence that Kolden had been promised any resolution of the pending charges in return for his testimony in the Schauf case.

¶34 The District Court made a reasoned and conscientious decision regarding cross-examination of Kolden. The pending charges against Kolden were unproven and were probative of nothing. Allowing inquiry into the pending charges would have risked jury confusion and could have consumed considerable time if the prosecution felt compelled to present additional testimony to explain the circumstances of the charges and to prove that they did not impugn Kolden's credibility in the Schauf case. The District Court did not abuse its discretion in limiting cross-examination of witness Kolden. *First Citizens Bank v. Sullivan*, 2008 MT 428, ¶¶ 20-25, 347 Mont. 452, 200 P.3d 39.

¶35 *Issue Three: Whether the District Court properly admitted evidence from hospital records of Schauf's blood alcohol content*. Schauf was transported to the hospital after the accident at her request and was admitted to the emergency room. The ER physician, Dr. Gregory Harrah, examined her and ordered tests called a "trauma panel." A nurse and a physician's assistant drew a sample of Schauf's blood pursuant to this order without incident. The blood sample was tested in the hospital's laboratory and one of the results was a BAC reading that was the equivalent of approximately .310.

¶36 The State obtained Schauf's medical record from the hospital pursuant to subpoena and she moved to suppress. The District Court held an evidentiary hearing and denied the motion. The evidence of Schauf's blood alcohol content from the hospital's medical record was admitted at trial.

13

¶37 This Court has upheld the prosecution's use of medical records showing a blood alcohol level when they are lawfully obtained by subpoena. *State v. Nelson*, 283 Mont. 231, 237, 941 P.2d 441, 445 (1997). Schauf does not attack the validity of the subpoena.

¶38 Schauf argues that Dr. Harrah acted as the State's agent in taking the blood sample. Unlike the situation in *State v. Kirkaldie*, 179 Mont. 283, 587 P.2d 1298 (1978) where the doctor was clearly acting as agent for the State, there is no material evidence that this was the case here. There is no evidence that the hospital sample was drawn for any purpose other than providing diagnosis and treatment to Schauf. There is no evidence that the sample was drawn for or at the request of the arresting officer. The statutory provisions dealing with blood samples drawn for purposes of a prosecution expressly do not apply to samples used for medical treatment or care. Section 61-8-402(10), MCA. The constraints placed upon blood samples drawn by or for the State do not apply to "any other competent evidence" relevant to the issue of intoxication. Section 61-8-404(3), MCA. Blood alcohol evidence from medical tests is admissible even where the defendant has refused to consent to the State blood draw. *State ex rel. McGrath v. Twenty-First Judicial District Court*, 2001 MT 305, ¶¶ 12-16, 307 Mont. 491, 38 P.3d 820; *Fregien*, ¶ 11.

¶39 Schauf last challenges admissibility of the medical blood sample results on foundation and chain of custody grounds. Despite Schauf's contentions on this issue, the District Court found that there was "no question that the blood was taken in the hospital, was labeled in the hospital . . . . There is no evidence that it ever left the hospital or that the integrity of the sample was ever outside the custody of the hospital." The District

14

Court found that Schauf's contentions about minor inconsistencies in the hospital record at most affected the weight to be given to the evidence and that was an issue for the jury to decide. None of Schauf's objections to the medical blood sample went to foundational requirements for admission of this evidence. *McGrath*, ¶ 17.

¶40 *Issue Four: Whether the District Court properly admitted a patrol car video of Schauf taken the night of the accident.* The State offered a videotape taken from the arresting officer's patrol car camera depicting Schauf's behavior at the scene of the crash. Schauf moved to suppress on the ground that the prejudicial effect of the evidence outweighed its probative value.

¶41 The Rules of Evidence allow exclusion of relevant evidence if the "probative value is substantially outweighed by the danger of unfair prejudice." M. R. Evid. 403. Evidence is generally unfairly prejudicial when it "arouses the jury's hostility or sympathy for one side without regard to its probative value." *State v. Bieber*, 2007 MT 262, ¶ 59, 339 Mont. 309, 170 P.3d 444. The district court exercises its discretion to balance the probative value of the evidence against its prejudicial effect. *State v. Huether*, 284 Mont. 259, 265, 943 P.2d 1291, 1295 (1997).

¶42 The video of Schauf immediately after the accident was clearly relevant and probative of her condition and particularly of her level of intoxication. Even if a blood alcohol test is available, "any other competent evidence" bearing upon the issue of driving under the influence is specifically admissible. Section 61-8-401(5), MCA. The jury at Schauf's trial also heard evidence that the video was taken just after the horrific high speed crash and that Schauf had suffered a head injury. The jury was in a position

15

to weigh these factors and to give the evidence as a whole the weight they determined that it deserved. As the District Court found, the only prejudice to Schauf was that the video was "highly probative" of the State's contention that she was intoxicated at the time of the crash. The evidence was not unfairly prejudicial.

¶43 The District Court properly exercised its discretion on this issue and there was no error.

¶44 We affirm Schauf's convictions.

/S/ MIKE McGRATH

We concur:

/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON