FILED

09/19/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0683

DA 16-0683

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 229

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MICHAEL L. BERGER,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twentieth Judicial District, In and For the County of Sanders, Cause No. DC 16-68 Honorable Deborah Kim Christopher, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Sean Hinchey, Hinchey & Hinchey, PC, Kalispell, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

          Kathryn McEnery, Hot Springs City Attorney, Hot Springs, Montana

Submitted on Briefs: June 14, 2017

Decided: September 19, 2017

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Michael Berger appeals the ruling of the Montana Twentieth Judicial District Court, Sanders County, affirming the Hot Springs City Court's denial of his motion to dismiss. We affirm.

## ISSUE

¶2     Did the District Court err when it affirmed the Hot Springs City Court's denial of Berger's motion to dismiss?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In March 2016, Hot Springs Police Officer Smith responded to multiple calls that Michael Berger was behaving violently and driving erratically and dangerously. Upon locating Berger and approaching him in the presence of multiple witnesses, all claiming Berger was intoxicated and had been driving erratically, Smith observed that Berger was visibly intoxicated. After Berger failed multiple field sobriety tests, Smith took Berger into custody, read the advisory for a preliminary alcohol screening test (PAST), and asked Berger to submit to the test. Berger refused and Smith arrested him for reckless driving, criminal mischief, DUI-second offense, and negligent endangerment and transported him to the detention center. Officer Smith did not inform Berger that he had the right to obtain an independent alcohol blood test.

¶4     In May 2016, Berger filed a motion to dismiss, arguing that Smith failed to read the Montana implied consent advisory required by § 61-8-405, MCA, and that such failure was a violation of Berger's due process rights. On May 31, 2016, the Hot Springs

2

City Court denied Berger's motion. In August 2016, reserving his right to appeal the City Court's denial of his motion, Berger entered into a plea agreement pleading guilty to reckless driving, criminal mischief, and DUI-first offense. The charge of negligent endangerment was dismissed. The Hot Springs City Court approved the plea agreement and entered its Sentence and Order on August 3, 2016. On the same day, Berger filed his notice of appeal to the Twentieth Judicial District Court.

¶5 On September 16, 2016, the District Court issued its Order Upholding Denial of Defense Motion to Dismiss. The court held that the appropriate remedy for the failure of an officer to advise an accused of the right to an independent test is suppression of any blood or breath tests the State may have undertaken. The court thereby suppressed "any evidence of the [PAST] or any other blood or breath alcohol testing performed by the police." In November 2016, Berger appealed the District Court's order.

## STANDARD OF REVIEW

¶6 District courts serve as intermediate appellate courts for cases tried in municipal courts. The scope of district court review on intermediate appeal is confined to review of the record and questions of law. We review district court appellate decisions under the applicable standard of review as if originally appealed to this Court. *City of Helena v. Grove*, 2017 MT 111, ¶ 4, 387 Mont. 378, 394 P.3d 189 (internal citations omitted). The denial of a motion to dismiss is a question of law subject to de novo review. *State v. Harrison*, 2017 MT 60, ¶ 6, 387 Mont. 52, 390 P.3d 945.

**DISCUSSION**

¶7 *Did the District Court err when it affirmed the Hot Springs City Court's denial of Berger's motion to dismiss?*

¶8 Berger maintains on appeal that Officer Smith was required to inform him of his right to obtain potentially exculpatory evidence through independent testing and that the officer's failure to read the Montana implied consent advisory to him as required in § 61-8-405, MCA, was a violation of his due process rights. He further argues that because he declined the PAST and there was no blood alcohol sample in his case, the District Court erred in ordering the suppression of non-existing evidence rather than dismissing the case.

¶9 The State counters that failure to provide Berger notice of his right to obtain an independent blood test does not provide ground for dismissal of any of Berger's charges. First, and relying on *State v. Schauf*, 2009 MT 281, 352 Mont. 186, 216 P.3d 740, the State asserts that such failure would not provide grounds for dismissal of Berger's non-DUI-related charges of reckless driving and criminal mischief. Additionally, and addressing this Court's holding in *State v. Strand*, 286 Mont. 122, 951 P.2d 552 (1997), the State contends that if an officer does not request a blood or breath test pursuant to § 61-8-402, MCA, then the officer is not obligated to advise of the right to obtain an independent blood sample. Alternatively, the State argues that if under *Strand* the officer was required to advise Berger of his right to an independent test, dismissal of the case for failure to do so is not the appropriate remedy.

¶10 The statutes relevant to our analysis are §§ 61-8-402, -405, and -409, MCA.

Section 61-8-402(1), MCA, states:

> A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body.

Section 61-8-405(2), MCA, provides, in relevant part:

> In addition to any test administered at the direction of a peace officer, a person may request that an independent blood sample be drawn by a physician or registered nurse for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person. The peace officer may not unreasonably impede the person's right to obtain an independent blood test. . . .

Section 61-8-409, MCA, provides, in relevant part:

> (1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a preliminary alcohol screening test of the person's breath, for the purpose of estimating the person's alcohol concentration, upon the request of a peace officer who has a particularized suspicion that the person was driving or in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol or in violation of 61-8-410 or 61-8-465.
>
> (2) The person's obligation to submit to a test under 61-8-402 is not satisfied by the person submitting to a preliminary alcohol screening test pursuant to this section.
>
> (3) The peace officer shall inform the person of the right to refuse the test and that the refusal to submit to the preliminary alcohol screening test will result in the suspension for up to 1 year of that person's driver's license.

¶11 This Court has decided numerous cases involving an officer's failure to provide notice to a DUI-accused of his or her right to an independent blood alcohol test. In *State*

5

*v. Swanson*, 222 Mont. 357, 722 P.2d 1155 (1986), Swanson was charged with DUI, refused to submit to a breath test, and requested a blood test at his own expense. *Swanson*, 222 Mont. at 359, 722 P.2d at 1156. Swanson was taken to the local hospital where a blood sample was taken. However, the sample was improperly preserved by the officers and subsequently was unavailable for Swanson's defense. Swanson moved for dismissal of his case and the district court denied his motion. On appeal, this Court noted that the "careless handling" of Swanson's sample impeded his "due process right to gather possible exculpatory evidence." *Swanson*, 222 Mont. at 362, 722 P.2d at 1158. We reversed the district court and dismissed Swanson's case concluding that dismissal of the case with prejudice was the proper remedy when an officer impedes an accused's right to an independent blood test. *Swanson*, 222 Mont. at 362, 722 P.2d at 1158. Notably, in *Swanson*, this Court "did not go so far as to create an affirmative duty to inform an accused of his right to an independent blood test." *Strand*, 286 Mont. at 126, 951 P.2d at 554.

¶12 Revisiting *Swanson* in our subsequent decision in *Strand*, this Court expressly held "that due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer." *Strand*, 286 Mont. at 126, 951 P.2d at 554. Strand was arrested for driving under the influence of alcohol. Kalispell police officers advised him of the consequences of refusal to submit to a BAC breath test. Strand consented to the BAC; therefore, and in accordance with Kalispell Police Department policy, the officers did not advise him of his right to obtain an independent blood test. *Strand*, 286 Mont. at

6

124, 951 P.2d at 553. Subsequently, Strand moved to dismiss his charges based upon the officers' failure to advise him of his right to independent blood testing. The district court denied the motion and Strand entered into a conditional plea of guilty. *Strand*, 286 Mont. at 124, 951 P.2d at 553. On appeal, after determining that Strand's due process rights were violated by the officers' failure to inform him, the Court concluded that the appropriate remedy was not dismissal but rather suppression of the BAC results. The Court explained that given an accused's right to obtain an independent blood test, "[f]airness . . . dictates that the State not be allowed to utilize scientific evidence of intoxication (i.e., tests of a person's blood or breath) if[,] through omission of the State, the accused is not advised of the right to obtain his or her own scientific evidence of blood alcohol concentration." *Strand*, 286 Mont. at 128, 951 P.2d at 555.

¶13 We further refined our position on this issue in *Schauf*. In *Schauf*, while traveling at a high rate of speed, Schauf rear-ended a pickup truck causing the truck to overturn, resulting in the death of one of the truck's passengers and the serious injury of the two other occupants of the truck. *Schauf*, ¶ 2. The officer responding to the scene asked Schauf whether she would consent to a blood test but she did not answer. Shortly thereafter, the officer took Schauf to the hospital at her request and while there the officer asked the emergency room personnel to draw blood from Schauf for an alcohol-level determination. *Schauf*, ¶ 6. The blood test indicated Schauf's blood alcohol level was .31. Later, Schauf's doctor ordered another blood test for treatment purposes. The second test also indicated Schauf's blood alcohol level was .31. *Schauf*, ¶ 6.

¶14    Schauf was charged with negligent homicide, negligent vehicular assault, and criminal endangerment. *Schauf*, ¶ 1. Subsequently, on Schauf's motion, the district court suppressed the evidence of the officer-requested blood test results on the ground the officer had not advised Schauf of her right to obtain an independent blood test. The court admitted the physician-requested blood test results. *Schauf*, ¶ 6. Schauf appealed her subsequent conviction asserting the district court should have granted her motion to dismiss all of the charges against her based upon the trooper's failure to advise her of her right to obtain an independent blood test. *Schauf*, ¶ 16.

¶15    The Court noted that the three offenses for which Schauf was charged were criminal felonies under Title 45 of the Montana Code Annotated. It further noted that Schauf was not charged with DUI under Title 61, MCA. It observed, however, that negligent vehicular assault contains "driving under the influence of alcohol or drugs" as a statutory element of the offense. Citing *State v. Stueck*, 280 Mont. 38, 43, 929 P.2d 829, 832-33 (1996), the Court determined the implied consent provisions of Title 61 applied to Schauf's negligent vehicular assault charge. *Schauf*, ¶ 19. Also relying on *Stueck*, the Court held that "failure to advise Schauf of her right to an independent blood test under § 61-8-405, MCA, provides no basis for dismissal" of the negligent homicide and criminal endangerment charges as those offenses contain no express statutory element tied to the DUI provisions of Title 61, chapter 8, part 4, MCA. *Schauf*, ¶ 20. Applying our reasoning and holding in *Schauf* to the case before us, Officer Smith's failure to advise Berger of his right to an independent blood test does not entitle Berger to dismissal of the reckless driving and criminal mischief charges.

¶16 We now address whether the District Court erred in denying Berger's motion to dismiss his DUI charge based upon the officer's failure to advise him of his right to an independent test.

¶17 A PAST, also known as PBT (preliminary breath test), is generally used to establish whether probable cause exists for an arrest for intoxication and is performed in conjunction with other field sobriety tests. The results of the PAST are obtained by breathing into a portable handheld device carried by an officer. Under § 61-8-409(1), MCA, a Montana driver is "considered to have given consent" to a PAST. If, however, the driver refuses to submit, under the statute, the consequence of the driver's refusal is automatic loss of his or her license for up to one year. The results of a PAST are not admissible into evidence unless the party seeking to use the results establishes through expert testimony that the PAST result is accurate and reliable. *State v. Reavley*, 2007 MT 168, ¶ 11, 338 Mont. 151, 164 P.3d 890.

¶18 After an officer establishes probable cause and initiates an arrest, the accused may be asked to submit to a separate breath test using a non-portable Intoxilyzer machine. An arresting officer may ask the accused to submit to a blood test to determine blood alcohol content (BAC). The results from the Intoxilyzer and a blood test generally are more accurate than those obtained from a PAST. Such requests by the officer would be made under, and subject to, §§ 61-8-402(1) and -405, MCA.

¶19 In *Swanson*, *Strand*, and *Schauf*, the arresting officer asked the accused to take a blood or breath test under § 61-8-402(1), MCA. Swanson refused, Strand consented, and Schauf did not reply. *Swanson*, 222 Mont. at 359, 722 P.2d at 1156; *Strand*, 286 Mont. at

9

124, 951 P.2d at 553; *Schauf*, ¶ 6. In the case at bar, Officer Smith did *not* ask Berger to submit to testing under § 61-8-402, MCA; rather, the officer asked Berger to submit to a PAST under § 61-8-409(1), MCA, and Berger refused. As required by § 61-8-409(3), MCA, Officer Smith informed Berger of the consequences of refusing the test. The officer's request for Berger to take the PAST under § 61-8-409, MCA, distinguishes the above-referenced cases from the case before us.

¶20    In its order upholding the denial of Berger's motion to dismiss, the District Court held that the appropriate remedy for the failure of an officer to advise an accused of the right to an independent test is suppression of any blood or breath tests the State may have undertaken. Since there was no test result in this case, there was nothing to suppress.

¶21    We conclude that Smith's failure to notify Berger of his § 61-8-405, MCA, right to obtain an independent blood test does not constitute impeding Berger's right to obtain such a test nor does it violate Berger's due process rights. Consequently, the District Court did not err in denying his motion to dismiss.

¶22    Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ BETH BAKER

10

Justice Laurie McKinnon, concurring.

¶23 Neither § 61-8-402, MCA, the implied consent statute; § 61-8-409, MCA, the PAST statute; nor § 61-8-405, MCA, which permits a person to have an additional and independent test, require that the person tested be informed of the opportunity to have an additional test administered. The *only* statutory advisement necessary in a DUI investigation is that required by § 61-8-409(3), MCA, when a peace officer has particularized suspicion that a person is driving under the influence. Pursuant to § 61-8-409(3), MCA, although the person is still considered to have given consent to a PAST, the peace officer must nonetheless advise "the person of the right to refuse the test and that the refusal to submit to the preliminary alcohol screening test will result in the suspension for up to 1 year of that person's driver's license."

¶24 If the person refuses to perform a PAST, the officer may elect to proceed under § 61-8-402, MCA, (1) if the officer has probable cause for DUI, or (2) the person has been placed under arrest for DUI or aggravated DUI. Section 61-8-402(2), MCA. If the person refuses a test requested by the officer pursuant to § 61-8-402(2), MCA, then the test cannot be given and the officer may apply for a "search warrant to be issued pursuant to 46-5-224 to collect a sample of the person's blood for testing." Section 61-8-402(5), MCA. The testing of breath requires the affirmative act by the suspect of blowing into a testing instrument, an act which even a warrant cannot compel. Thus, the significance of § 61-8-402, MCA, aside from setting forth the penalty provisions for license suspension, is that it recognizes the necessity in a DUI investigation for collecting a person's blood when a breath sample is unobtainable. However, any statutory right to be informed of the

11

opportunity to have an independent test administered must have its source in a different statutory provision, because no statutory advisements of any nature are required by § 61-8-402, MCA.

¶25    Section 61-8-405, MCA, which is neither referred to nor mentioned in § 61-8-402, MCA, provides for the manner in which tests are to be administered.[1]  It ensures that only a physician, registered nurse or other qualified person will withdraw a person's blood, although the limitation does not apply to the sampling of breath.  For purposes of this proceeding, § 61-8-405(2), MCA, provides that:

> [A] person may request that an independent blood sample be drawn by a physician or registered nurse for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person.  The peace officer may not unreasonably impede the person's right to obtain an independent blood test.  The officer may but has no duty to transport the person to a medical facility or otherwise assist the person in obtaining the test.  The cost of an independent blood test is the sole responsibility of the person requesting the test.  The failure or inability to obtain an independent test by a person does not preclude the admissibility in evidence of any test given at the direction of a peace officer.

The plain, clear, and unambiguous language of § 61-8-405(2), MCA, does not impart a responsibility or obligation on a peace officer to *inform* a person suspected of DUI that he/she may obtain an independent blood test.  Thus, we may reasonably conclude that the Legislature did not intend to require that the arresting officer inform the person tested of the availability of an additional test.

---

[1]  Section 61-8-402(13), MCA, does address the release of information obtained "from tests, samples, and analyses of blood or breath for law enforcement purposes as provided in 46-4-301 and 61-8-405(6)."

12

¶26    This Court first interpreted the provisions of § 61-8-405(2), MCA, in *Swanson*. We did so, however, within the context of due process and the fundamental right of the accused to obtain independent evidence of his innocence. When we held that "[w]hile the police have no duty to assist an accused in obtaining independent evidence of sobriety, they cannot frustrate such an effort through either affirmative acts or their rules and regulations," *Swanson*, 222 Mont. at 361-62, 722 P.2d at 1158, we were recognizing a right to *noninterference* by police in the accused obtaining an independent blood test. We recognized, however, that the right of noninterference, was grounded in principles of due process and not in the specific language of § 61-8-405(2), MCA. As Swanson was denied the use of potentially exculpatory evidence through law enforcement's mishandling of his blood evidence, we affirmed the trial court's dismissal of the charges.

¶27    In *Strand*, we took "the next step and [held] that due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer." *Strand*, 286 Mont. at 126, 951 P.2d at 554. We held that "[f]airness" dictated that there was a "corresponding [statutory] right to obtain an independent blood test" and that the right is rendered meaningless unless the defendant is apprised of this right. *Strand*, 286 Mont. at 128, 951 P.2d at 555. We expressly premised the requirement that the accused be apprised of the right to obtain an independent blood test on the right to due process of law. *Strand*, 286 Mont. at 127, 951 P.2d at 555. We explained "[f]airness thus dictates that the State not be allowed to utilize scientific evidence of intoxication . . . if; through omission of the State, the accused is not advised of the right to obtain his or her own

13

scientific evidence of blood alcohol concentration." *Strand*, 286 Mont. at 128, 951 P.2d at 555.

¶28 In *Schauf*, this Court explained that suppressing the State's testing evidence where the accused was not advised of the right to an independent test remained the proper remedy when the officer does not actually impede the accused's right to an examination. *Schauf*, ¶ 25. We found that "[t]his approach was consistent with other decisions from this Court outside the DUI context dealing with an accused's due process right to obtain exculpatory evidence." *Schauf*, ¶ 24. When law enforcement officers "intentionally suppress exculpatory evidence, there is per se a violation of the accused's right to due process and dismissal is warranted." *Schauf*, ¶ 24; citing *State v. Weaver*, 1998 MT 167, ¶ 54, 290 Mont. 58, 964 P.2d 713.

¶29 Thus, the basis upon which this Court has required that an accused be advised by law enforcement of the right to obtain an independent blood test is rooted in principles of due process; the Legislature has not required such an advisement in any statutory provision, neither §§ 61-8-402, -405, nor -409, MCA. The requirement to advise an accused of the right to an independent blood test is based on principles of fairness and the right to obtain exculpatory evidence; more particularly, that the State may not be allowed to utilize scientific evidence of intoxication without the accused having the corresponding right to obtain his or her own scientific evidence of blood alcohol concentration.

¶30 Here, there is no statutory right which required Officer Smith to advise Berger he could obtain an independent blood test. Section 61-8-409, MCA, imposes no such requirement prior to obtaining a breath sample for a PAST. Law enforcement did not

14

invoke the provisions of § 61-8-402, MCA, and consequently the State did not obtain any scientific evidence of blood alcohol concentration. As there is no evidence that law enforcement intentionally interfered with Berger's right to obtain exculpatory evidence, dismissal is not warranted. Conversely, because Officer Smith did not pursue a blood test pursuant to § 61-8-402, MCA, there is no evidence to suppress.

¶31 Our jurisprudence as it relates to the implied consent statutes and independent blood tests has been inconsistent. The Court recognized in *Strand* a right of the accused to be advised he or she could have an independent blood test when the State seeks to admit testing evidence against the accused. Our decision in *Strand* recognizing such a right was premised upon due process; it was not the Legislature's decision and any discussion of a statutory basis for informing the accused of a right to an independent blood draw is misplaced. It is upon principles of due process that the instant dispute should be evaluated and resolved. Berger has not demonstrated the State admitted its own testing evidence and that he has been deprived of his "corresponding [statutory] right to obtain an independent blood test." *Strand*, 286 Mont. at 128, 951 P.2d at 555. Berger has failed to demonstrate any fundamental unfairness in these proceedings or violation of his right to due process of law by the failure of law enforcement to apprise him of his right to obtain an independent blood test.

¶32 As a final point, consistent with *Strand* and due process, law enforcement should continue to advise DUI arrestees of their statutory right to an independent blood test prior to obtaining scientific evidence contemplated for use at trial. As a practical matter, however, I find it difficult to imagine a situation where an accused's refusal to take *any*

15

breath test, where law enforcement does not take the next step of obtaining a search warrant for a blood draw, would ever amount to a constitutional due process violation—for the simple reason that the State has not obtained any scientific evidence against the accused. Moreover, a PAST is rarely admissible at trial and, under similar reasoning, a due process violation would not occur through failure of law enforcement to advise of the right to an independent blood test.

¶33 I think it important to be clear about the principles upon which we affirm the District Court's denial of Berger's motion. I otherwise concur in the disposition rendered by this Court.

/S/ LAURIE McKINNON

Justice Beth Bakers joins the concurrence.

/S/ BETH BAKER

16