For Appellant: Kelly M. Driscoll, Montana Legal Justice, PLLC, Missoula, Montana
For Appellee: Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana, William E. Fulbright, Ravalli County Attorney, Hamilton, Montana
Justice Jim Rice delivered the Opinion of the Court.
***256 ¶1 Michael Moore appeals his conviction upon guilty plea for driving under the influence (DUI) in the Twenty-First Judicial District, Ravalli County. We affirm, and address the following issue:
Did the District Court err by denying Moore's motion to suppress ***257 blood test results obtained by a search warrant, for violation of due process?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 On the evening of March 26, 2015, Montana Highway Patrol Trooper Adam Gane pulled Moore over near Corvallis after Gane observed Moore leave the road on the right, and then overcorrect to the left, crossing the center line. During the stop, Gane inquired about a half-full, one-liter bottle of Vodka beneath Moore's coat. Moore responded with slurred words that "I don't know where that came from," and said the vehicle belonged to his son. Moore claimed he had consumed only a single beer that evening.
¶3 Moore did not have identification, but dispatch informed Gane that Moore had three prior DUI convictions, a suspended driver's license, and a pending arrest warrant. Gane observed that Moore smelled of alcohol, slurred his words, had bloodshot eyes, and had difficulty balancing. Gane conducted a horizontal gaze nystagmus test, which indicated Moore was intoxicated. Moore declined further field sobriety tests, citing a back injury.
¶4 Trooper Gane arrested Moore. Gane read Moore the preliminary alcohol screening test advisory and asked Moore to take a preliminary breath test. Moore refused. Gane then started to read the implied consent advisory to Moore. However, before Gane could finish reading the advisory, Moore interrupted him and said, "We can cut this short, I'm not gonna do anything till I talk to my attorney." Gane interpreted Moore's interruption and comments as a refusal of any further testing, and did not finish the advisory, including the portion stating that Moore could seek an independent sobriety test. Instead, Gane informed Moore that he was going to apply for a search warrant to have Moore's blood drawn, to which Moore replied, "OK."
¶5 Trooper Gane drove Moore to Marcus Daly Memorial Hospital in Hamilton. During the ride, Moore appeared to drift in and out of consciousness. While parked in the hospital parking lot, Gane applied for a telephonic search warrant for a blood draw from his patrol car. Gane relayed to the Justice of the Peace the results of his investigation that indicated Moore was driving under the influence. Part of Gane's oral application included reading from a pre-printed application form, during which Gane incorrectly stated that Moore had been informed of his right to an independent blood test. Gane later testified that Moore, sitting in the backseat, overheard *330 the conversation, which was on speakerphone, and the District Court found that Moore did not dispute Gane's testimony in this regard. Upon consideration of the application, ***258 the Justice of the Peace found there was probable cause for issuance of a warrant authorizing the draw of two vials of Moore's blood. The blood obtained pursuant to the warrant was analyzed by the Montana State Crime Lab, indicating a .332 blood alcohol concentration. Moore was hospitalized that night due to a medical condition, and the hospital conducted an independent blood alcohol analysis for medical treatment.
¶6 The State charged Moore with felony DUI and misdemeanor offenses of driving while suspended, reckless driving, failure to have liability insurance, and unlawful possession of an open container. Moore moved to suppress the blood tests obtained pursuant to the warrant, asserting a violation of due process by Gane's failure to advise Moore of his right to an independent blood draw. The State then applied for issuance of an investigatory subpoena to the hospital, which ordered production of the following to the Ravalli County Attorney's Office:
A copy or reprint of any and all medical records, including but not limited to, x-ray reports, laboratory reports, admission records, progress notes, nursing notes, emergency room records, ambulance or emergency medical service records, physician orders and notes, treatment notes, related to the medical blood draw, and all other records related to the Suspect's injuries and admission on or about March 17, 2015.
Moore moved to suppress the medical records obtained pursuant to the subpoena, arguing it had violated his right to privacy.
¶7 The District Court held an evidentiary hearing on Moore's suppression motions, wherein Gane testified. The District Court found Gane's testimony to be credible. Reasoning that Moore had failed to rebut the State's argument "that any irregularity in the telephonic search warrant process had no effect on the substantial rights of Moore," the District Court denied the motion to suppress the results of the tests obtained by the warrant, as well as the motion to suppress the records obtained by subpoena. Moore then pled guilty to felony DUI, reserving his right to appeal the suppression issues.
STANDARD OF REVIEW
¶8 "We review de novo a district court's decision denying a criminal defendant's motion to dismiss." State v. Neva , 2018 MT 81, ¶ 11, 391 Mont. 149, 415 P.3d 481 (citations omitted).
DISCUSSION
¶9 Moore asserts the District Court erred by denying his motion to ***259 suppress the evidence obtained by the warrant because he was denied his due process right to obtain an exculpatory, independent blood test by Trooper Gane's failure to advise him of the right, citing State v. Strand , 286 Mont. 122, 951 P.2d 552 (1997), State v. Minkoff , 2002 MT 29, 308 Mont. 248, 42 P.3d 223, and State v. Schauf , 2009 MT 281, 352 Mont. 186, 216 P.3d 740.[1]
¶10 Montana's implied consent statute provides that a person is "considered to have given consent to a test or tests of the person's blood or breath" when driving on public roads. Section 61-8-402(1), MCA. If an arrested person refuses the tests, "the refused test or tests may not be given," but the officer must immediately seize the person's driver's license. Section 61-8-402(4), MCA. If, as here, the arrested person has previously been convicted of DUI, then the officer may apply for a search warrant to collect a sample of the person's blood. Section 61-8-402(5), MCA. Further, "[o]ne accused of DUI 'has a right to obtain a sobriety test independent of that offered by the arresting officer.' " Neva , ¶ 13 (collecting cases).
¶11 The State argues that "the remedy in Strand of suppressing the BAC test results cannot be granted in this case because the State did not 'succeed[ ] in obtaining a blood or breath test pursuant to the implied consent law,' " quoting our language in Strand . The State argues that the due process violation *331 found in Strand did not occur here because Moore's blood sample was obtained by a search warrant, and not under the implied consent statutes. Moore replies that one accused of DUI "has a due process right to be advised of his right to an independent test if the State is taking his blood pursuant to either the implied consent law or via search warrant."
¶12 The State correctly notes that Strand , Minkoff , and Schauf all involved challenges to tests taken pursuant to the implied consent statutes, not a search warrant, and pinpoints the precise language of our holdings reflecting that case posture. However, we have made clear that "due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer," Strand , 286 Mont. at 126, 951 P.2d at 554, and explained the general necessity of the independent test advisory:
While some citizens of Montana may be aware of the obligation they undertake by driving-to consent to a blood or breath alcohol ***260 test or forfeit their licenses-most are not aware of their corresponding right to obtain an independent blood test. Because of the evanescent character of blood alcohol evidence, the decision to obtain an independent test must be made in a timely fashion. Therefore, unless the defendant is apprised of this right while the blood can still be analyzed, the right is rendered meaningless.
Strand , 286 Mont. at 126-27, 951 P.2d at 554 (internal citations omitted). Consequently, even when blood tests are obtained pursuant to a warrant, the independent test advisory is a component of due process for which suppression may remedy a violation.
¶13 We have also explained that the right to obtain an independent test is not "absolute" or "without limitation." State v. Clark , 234 Mont. 222, 225, 762 P.2d 853, 855 (1988). The right to due process of law guaranteed by Article II, Section 17 of the Montana Constitution and the Fourteenth Amendment to the United States Constitution "is flexible and calls for such procedural protections as the particular situation demands." State v. West , 2008 MT 338, ¶ 32, 346 Mont. 244, 194 P.3d 683 (quoting Morrissey v. Brewer , 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ). "[D]ue process is ultimately measured by the fundamental fairness of the proceeding." State v. Edmundson , 2014 MT 12, ¶ 17, 373 Mont. 338, 317 P.3d 169 (citing West , ¶ 23 ). We determine whether due process was denied by considering "the totality of facts in a given case." West , ¶ 32 (citing County of Sacramento v. Lewis , 523 U.S. 833, 850, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ). "That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." West , ¶ 32 (quoting Lewis , 523 U.S. at 850, 118 S.Ct. 1708 ).
¶14 The circumstances here include that this was Moore's fourth investigation and arrest for DUI. Gane first read the preliminary alcohol screening test advisory and obtained Moore's refusal to provide a test. Then Gane began reading the implied consent advisory, whereupon Moore interrupted the reading and said he was "cut[ting] this short" and that he was "not gonna do anything till I talk to my attorney." Gane accepted Moore's statement at face value that he would not do "anything," and understood it as constituting another refusal. Gane then advised Moore that a search warrant to obtain a blood sample would be sought, to which Moore replied, "OK." Moore overheard Gane describe the right to an independent test in the telephonic warrant application to the Justice of the Peace. While Moore argues on appeal that he may have been unconscious at that time, the District Court found that he had not factually rebutted Gane's testimony on the point. Ultimately, an independent blood test of Moore ***261 was obtained, albeit for purposes of medical care. While this test was not performed at Moore's request, the due process concerns about the "evanescent character of blood alcohol evidence," Strand , 286 Mont. at 126, 951 P.2d at 554, were not realized here. Moore does not dispute that the search warrant was properly issued by *332 the Justice of the Peace upon Gane's application.[2]
¶15 Considering the circumstances, we conclude that Moore's due process rights were not violated. As we have explained herein, the independent test advisory is of constitutional dimension, and we do not excuse its reading lightly. However, the substantial circumstances, including that the advisory's reading was impeded by Moore, have convinced us that there was no fundamental unfairness and that the circumstances "fall short of such a denial" of due process. West , ¶ 32 (quoting Lewis , 523 U.S. at 850, 118 S.Ct. 1708 ).
¶16 Affirmed.[3]
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.

Strand was overruled on other grounds in Minkoff , ¶ 23, though we later clarified it was unnecessary to overrule Strand and reaffirmed it in Schauf , ¶ 23.

Moore suggests, but does not expressly argue, that the warrant was invalid because it was based on Gane's incorrect statement that Moore had been informed of his right to an independent test. However, under a "Franks challenge," false information in a warrant application is excised, and probable cause is then assessed on the basis of the remaining information within the "four corners" of the application. See City of Missoula v. Williams , 2017 MT 282, ¶ 19, 389 Mont. 303, 406 P.3d 8. Apart from Moore's due process challenge, probable cause existed that Moore was driving under the influence, even if Moore was not advised of his right to an independent sobriety test. The District Court noted that Moore had not challenged the lack of probable cause for the warrant.

Moore also argues that his medical records, obtained via the subpoena, should be suppressed, based on a violation of his right to privacy under Article II, Section 10 of the Montana Constitution. We need not reach this issue because of our conclusion that evidence of the blood tests was properly obtained under the search warrant.