FILED

12/29/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0392

DA 18-0392

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 325N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

RUSTY JAY WEBER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-17-515C
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Deborah S. Smith, Assistant Appellate Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Rob Cameron, Deputy Attorney General, Helena, Montana

Travis R. Ahner, Flathead County Attorney, Andrew C. Clegg, Deputy County Attorney, Kalispell, Montana

Submitted on Briefs: October 14, 2020

Decided: December 29, 2020

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Rusty Weber appeals an order of the Eleventh Judicial District Court, Flathead County, denying his motion to dismiss a charge of felony Driving Under the Influence ("DUI") in violation of §§ 61-8-401(1) and 61-8-731, MCA. Weber argues that law enforcement unreasonably impeded his right to obtain an independent blood test following his arrest. We affirm.

¶3 On September 16, 2017, Kalispell Police Department ("Department") Officer Andrew Haag arrested Weber on suspicion of DUI. Officer Haag transported Weber to the station, where an initial pat-down search produced a cellphone and a wallet with about $45 in cash, along with credit cards. Officer Haag placed these items on a counter, read Weber Montana's Implied Consent Advisory,[1] and requested that Weber take a breathalyzer test. Weber agreed to the breath test.

¶4 While waiting for the breathalyzer to warm up, Weber asked if he could make a call on his phone. Officer Haag replied: "I'm not [going] to let you use the phone right at this moment." Once the machine was ready, Weber gave a breath sample and again requested

---

[1] The Montana Implied Consent Advisory informs a DUI suspect he has the right to an independent blood test at his own expense.

2

to use his phone. Officer Haag stated that after giving one more sample, Weber could use his phone. Weber gave the second sample, and Officer Haag handed him his phone. Weber scrolled through his phone for several minutes until Officer Haag informed him the test results indicated he had a .20 blood alcohol content ("BAC") level. Without being asked, Weber then placed his phone back on the counter, and Officer Haag administered the *Miranda* warning.

¶5 When Officer Haag asked Weber if he understood his rights, Weber requested an independent blood test. Officer Haag informed Weber the test would be at his own expense and asked how Weber intended to pay its $150 cost. Weber responded that either his insurance or money in his bank accounts could cover the cost. Officer Haag told Weber, "If we can make those arrangements, then we'll make it happen" and, "Stay seated there and I'll see what we can do." He then left the booking area to try to arrange the test. While Officer Haag was gone, Weber got up and moved around the booking area. At one point an officer told him to have a seat. Weber complied with the request for a few minutes but soon started again walking around the booking area; no officer again told him to remain seated. Weber walked to the counter several times, which still held his personal belongings. The booking video shows Weber apparently handling his phone and at one point opening a can and placing what appears to be tobacco dip in his mouth. During this time, no officer requested that Weber refrain from handling his phone or his other personal items.

¶6 Over about thirty minutes, Officer Haag placed several calls attempting to set up an independent blood test. First, Officer Haag called Valley Medical Services, the

3

organization the Department usually contacts to perform independent blood tests. It was closed due to the late hour, however, and its on-call number was out of service. Officer Haag next contacted the Kalispell Regional Medical Center ("KRMC") emergency room. KRMC staff informed Officer Haag that a doctor's note would be required to administer an independent blood test.[2] Officer Haag also called the Flathead County Detention Center asking if it knew any other numbers or providers that would provide an independent blood test, but it had no other recommendations.

¶7 Officer Haag went back to the booking area and informed Weber he was unable to find a provider to administer an independent blood test. After a short discussion in which Weber repeatedly mentioned his right to get an independent blood test, Officer Haag stated he had exhausted his options and began placing Weber's belongings in a plastic bag. Officer Haag then cited Weber for felony DUI and informed Weber he would need to remain in jail until a justice of the peace was available. Weber again requested an independent blood test. At this point Officer Haag's supervisor, Sergeant Brooks, entered the booking area. Sergeant Brooks repeated that the officers had been unable to arrange a test, but that Weber may have "another option" through KRMC if he had a doctor who could order the test. Sergeant Brooks advised Weber he could be transported to have the test administered if so, but the $150 cost must be paid in cash. Weber replied he did not have a personal physician, trusted whomever at the hospital to administer the test, and

---

[2] At the hearing on Weber's motion to dismiss, Officer Haag testified that the KRMC staff member with whom he spoke stated that law enforcement could request a blood draw pursuant to a search warrant or with consent of the suspect, but that such a sample would be sent to the State crime lab.

4

could withdraw enough money to cover its cost from an ATM. A brief back and forth ensued, with Weber repeatedly asking if the ability to get an independent blood test was his right. In attempting to explain the law to Weber, Officer Haag stated, "it is not a right if it costs money," and Sergeant Brooks agreed with that characterization. Without a doctor to order the test, the officers soon transported Weber to the Flathead County Detention Center.

¶8 Denying Weber's motion to dismiss, the District Court found that although Weber timely requested an independent blood test, he "made no effort" to coordinate one, relying instead on law enforcement to arrange it for him. The District Court concluded that law enforcement reasonably attempted to secure an independent blood test, but circumstances beyond their control prevented one from occurring. Further, because Weber was arrested around midnight, he had no doctor to call, and no medical emergency necessitated emergency room treatment, the District Court concluded that any assertion by Weber that he would have received an independent test had law enforcement brought him to KRMC was pure speculation. Weber pleaded guilty to the charge, reserving his right to appeal.

¶9 We review de novo a district court's denial of a motion to dismiss a criminal charge. *State v. Neva*, 2018 MT 81, ¶ 11, 391 Mont. 149, 415 P.3d 481 (citing *State v. Minkoff*, 2002 MT 29, ¶ 8, 308 Mont. 248, 42 P.3d 223). A person accused of a crime has a constitutional due process right to obtain exculpatory evidence, including an independently administered BAC test. *Minkoff*, ¶ 9 (citing *State v. Swanson*, 222 Mont. 357, 360, 722 P.2d 1155, 1157 (1986)). Section 61-8-405(2), MCA, defines the scope and parameters of this right:

5

In addition to any test administered at the direction of a peace officer, a person may request that an independent blood sample be drawn by a physician or registered nurse for the purpose of determining any measured amount or detected presence of alcohol, drugs, or any combination of alcohol and drugs in the person. The peace officer may not unreasonably impede the person's right to obtain an independent blood test. The officer may but has no duty to transport the person to a medical facility or otherwise assist the person in obtaining the test. The cost of an independent blood test is the sole responsibility of the person requesting the test. The failure or inability to obtain an independent test by a person does not preclude the admissibility in evidence of any test given at the direction of a peace officer.

¶10 "[T]wo criteria must be established to support an allegation of denial of due process rights with regard to the right to an independent test." *Minkoff*, ¶ 10 (citing *State v. Sidmore*, 286 Mont. 218, 234, 951 P.2d 558, 568 (1997)). First, the accused must timely request an independent test; the parties do not dispute that Weber's requests in custody satisfy this prong. *Minkoff*, ¶ 10 (citation omitted). Second, law enforcement must "unreasonably impede the right to the test." *Minkoff*, ¶ 10 (citation omitted).

¶11 Weber argues that the officers unreasonably impeded his right to obtain an independent blood test by requiring him to pay its $150 fee with the cash he had on hand at the time of his arrest and by requiring him to obtain a doctor's order before transporting him to a hospital. The State argues that the right to an independent blood test is not absolute and law enforcement has no duty to "make it happen." Law enforcement here, the State contends, went "above and beyond" the requirements of the law in their attempts to set up an independent blood test for Mr. Weber—"who did nothing to help himself."

¶12 Weber has not met the high bar of demonstrating the officers' actions "unreasonably impede[d]" his right to seek an independent blood test. Section 61-8-405(2), MCA, is clear that law enforcement is under no obligation to transport

6

or otherwise assist an individual in obtaining such a test. Despite this, Department personnel made reasonable efforts to arrange an independent test. The Department's usual testing provider was unavailable due to the late hour, but Officer Haag nonetheless contacted KRMC and the Flathead County Detention Center attempting to arrange a test. Officer Haag's conversation with KRMC staff further indicated that even if he transported Weber to KRMC's emergency room, there was not a reasonable probability the staff would agree to administer an independent test to Weber absent a doctor's order.

¶13 On the whole record, we conclude that Officer Haag's comment, "it is not a right if it costs money," did not rise to an unreasonable impediment of Weber's ability to obtain the test. At its core, the right protected by § 61-8-405(2), MCA, is the right for a defendant to gather exculpatory evidence. *Minkoff*, ¶ 9. In *Minkoff*, we concluded that law enforcement unreasonably impeded the right to an independent test when an officer inaccurately, albeit in good faith, stated a blood test would show a higher BAC level than a breath test, and the defendant withdrew his request based on that representation. *Minkoff*, ¶ 16. Though Officer Haag's comment suggested that Weber would have to have the funds ready to pay for any independent blood test, Weber never wavered from his request for an independent test; we thus cannot conclude any possible misrepresentation unreasonably impeded Weber's right.

¶14 Weber relatedly argues the officers unreasonably required him to pay for the $150 test with cash despite only having around $45 on hand.[3] In the booking video, Officer

---

[3] It is unclear from the record if the $150 cash-only fee is a requirement specific to Valley Medical Center, the Department's usual contact for independent tests, or of independent blood test

7

Haag seems to accept Weber's explanation that he would pay for an independent draw through insurance or his bank account. Officer Haag knew that Weber did not have the full amount on hand before he made calls in an attempt to arrange an independent test. Sergeant Brooks's later statement that the fee must be paid in cash did not contribute to the officers' inability to locate a provider to administer an independent test. There was no reasonable probability KRMC would administer a blood draw without a doctor's note, and Weber took no action of his own to attempt to arrange an independent test or to obtain a doctor's note. With no potential test by any provider in sight, Weber's argument that law enforcement unreasonably impeded his right to obtain an independent test by stating he needed to pay its $150 fee in cash is speculative.

¶15 Weber maintains that a test would not have lost its independence if Officer Haag or Sergeant Brooks requested a hospital perform the test. By its plain language, however, the statute authorizing independent tests distinguishes between an "independent" blood test and a test ordered at the "direction" of law enforcement. *See* § 61-8-405(2), MCA ("In addition to *any test administered at the direction of a peace officer. . . .* The failure or inability to obtain an independent test by a person does not preclude the admissibility in evidence of *any test given at the direction of a peace officer*." (emphasis added)). Had the officers transported Weber to a hospital and ordered a blood test under their own authority—even with Weber's consent—that test would not be "independent" because it occurred at the "direction" of law enforcement. Because such a test would not be

---

providers generally. Either way, the nature of an independent blood test indicates law enforcement has no control over how the administering organization requires the testing fee be paid.

8

independently administered, we cannot conclude law enforcement's refusal to direct a hospital to administer a blood test unreasonably impeded Weber's right to an independent test under § 61-8-405(2), MCA.

¶16 Finally, Weber was never unreasonably denied access to his phone or prevented from making a call to arrange a test. Officer Haag initially seized Weber's phone during a routine pat-down search at the police station. Weber requested to use his phone, and Officer Haag handed it to him after the breathalyzer tests were completed. Weber freely looked through his phone for several minutes before voluntarily placing it back on the counter. After requesting an independent blood test, Weber never asked to use his phone to look up or to call a provider to administer a blood draw. Instead, he repeatedly insisted that the officers make those arrangements. In *Sidmore*, we held that law enforcement officers did not unreasonably impede a defendant's request for an independent blood test when they provided him a phone book and a phone to arrange for a test, but the defendant, over the course of about 30 minutes, failed to make any calls attempting to arrange one. *Sidmore*, 286 Mont. at 237-38, 951 P.3d at 570. *Sidmore* was decided in 1997; here, Weber accessed a modern smartphone, looked through it, and voluntarily placed it back on the counter. While he was alone in the booking area, Weber accessed his phone but did not attempt to place any calls, either to a medical provider or anyone else, to try to arrange a test. Weber was alone in the booking area with his phone for roughly the same amount of time as the defendant in *Sidmore*. As in *Sidmore*, Weber's own failure to act does not prove unreasonable impediment by law enforcement. *See Sidmore*, 286 Mont. at 238, 951 P.3d at 570.

9

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Weber has not shown on this record that law enforcement's actions unreasonably impeded his right to arrange an independent blood test. The District Court's interpretation and application of the law were correct, and it correctly denied Weber's motion to dismiss. The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR